# ELISABETH SOLOMON *v.* BASIL KEISER
## (13562)

SHEA, CALLAHAN, GLASS, COVELLO and HULL, Js.

Argued June 15—decision released August 22, 1989

*Wesley W. Horton,* with whom, was *Susan M. Cormier,* for the appellant (defendant).

*Peter B. O'Connell,* with whom, on the brief, was *Michael T. Dolan,* for the appellee (plaintiff).

GLASS, J. The plaintiff brought an action for specific performance of an alleged contract to purchase real property owned by the defendant. The trial court, *Moraghan, J.,* rendered judgment according to a stipulated agreement entered into by the parties. In accordance with the stipulation, the plaintiff deposited $100,000 in an escrow account pending completion of the transaction pursuant to the terms of the stipulation. The parties, however, subsequently disagreed over the term of the stipulation relating to the purchase price. Thereafter, the trial court opened its previous judgment, returned the case to the trial docket, and granted the plaintiff's motion to release the escrow fund.

The defendant appealed to the Appellate Court from the trial court's order releasing the escrow funds. On its own motion, the Appellate Court dismissed the appeal for lack of a final judgment. We granted the defendant's petition for certification on the issue whether the Appellate Court erred in ruling that the trial court's order was not a final judgment from which an appeal can be taken. We reverse the Appellate Court's judgment.

I

The facts are undisputed. In February, 1985, the plaintiff, Elisabeth Solomon, brought an action in the trial court for specific performance of an alleged contract with the defendant, Basil Keiser, to purchase property owned by the defendant in the town of Redding. Prior to trial, the parties reached an agreement in settlement of their dispute. On May 27, 1987, the

parties and their counsel appeared in court and recited the agreement for the record, the relevant terms of which provided as follows: (1) The plaintiff would deposit $100,000 into a joint escrow account. If the plaintiff ultimately acquired the property, "the $100,000.00 principal sum and all interest thereon would be applied to the purchase price." If the plaintiff did not acquire the property, "$50,000.00 of that principal sum, together with the interest on the $100,000.00 sum, [would] be paid to the Defendant . . . as a forfeiture, and the remaining $50,000.00 principal sum [would] be returned to the Plaintiff"; (2) the fair market value of the property would be determined by appraisers or, if the appraisers did not agree, by the court; and (3) "[u]pon the submission of the appraisers' report or the Court's ruling, the Plaintiff [would] then have the option to purchase the property at the appraised figure less $100,000.00 or the Court's figure less $100,000.00 or, as indicated above, [would] forfeit 50% of the principal sum and the interest."

After the agreement was recited, the parties stated that they understood and agreed to be bound by it. At the conclusion of the hearing, the trial court rendered judgment from the bench accepting the stipulated agreement. Subsequently, the plaintiff funded the escrow agreement in accordance with the stipulation. Further, on November 23, 1987, the parties and the trial court accepted the appraisers' valuation of the property of $1,150,000. On that date, however, disagreement arose concerning the actual purchase price. The plaintiff's counsel interpreted the stipulation to provide that the purchase price would be $100,000 less than the appraised value. Under the plaintiff's interpretation, therefore, the purchase price was $1,050,000, to which the $100,000 in escrow would then be applied. The defendant's counsel claimed, however, that the $100,000 to be deducted from the purchase price refer-

red to the amount in the escrow account, which would be credited toward the purchase price. On November 30, 1987, the plaintiff sent a notice to the defendant purporting to exercise her option to purchase the property for $1,050,000. The defendant refused to convey the property.

On December 3, 1987, the plaintiff filed a motion asking the trial court to clarify the judgment rendered on May 27, 1987, regarding the purchase price of the property. On Monday, January 4, 1988, the trial court conducted a hearing on the plaintiff's motion. The court declined to clarify the disputed terms of the stipulated judgment and instead ordered that if the case did not settle by Friday, January 8, 1988, the court would declare a mistrial and return the case to the trial list. On January 14, 1988, the defendant filed a motion seeking an order dismissing the plaintiff's complaint and distributing the escrow fund in accordance with the forfeiture provision of the stipulated judgment. On January 25, 1988, the trial court denied the defendant's motion, declared a mistrial, and ordered the case placed back on the trial list.

On April 25, 1988, the plaintiff filed a motion for release of the escrow funds and an order directing payment of the entire principal sum plus interest to the plaintiff. On June 28, 1988, the court granted the plaintiff's motion. In a subsequent articulation, the court stated that by returning the escrow funds to the plaintiff, it intended "to recreate and maintain that status quo [prior to the stipulated judgment] so the trial de novo . . . would resolve the case once and for all." The defendant appealed to the Appellate Court from the June 28, 1988 order of the trial court granting the plaintiff's motion to release the escrow account. In his appeal, the defendant claimed that the trial court: (1) did not have jurisdiction to open the stipulated judgment of May 27, 1987, more than four months after

it rendered that judgment, and therefore erred in nullifying the forfeiture provisions of the stipulation by releasing the escrowed funds to the plaintiff; (2) erred by failing to conduct an evidentiary hearing before releasing the funds; and (3) abused its discretion by releasing the defendant's security.

On appeal, the Appellate Court, sua sponte, set the matter down for oral argument on whether the appeal should be dismissed for lack of a final judgment. After oral argument, the Appellate Court on November 3, 1988, without opinion, dismissed the appeal on that basis. We then granted the defendant's subsequent petition for certification limited to the following issue: "Did the Appellate Court err in rendering a judgment of dismissal for lack of a final judgment when the trial court reopened and set aside a stipulated judgment and authorized the release of a previously ordered escrow fund?"

II

On certification, the defendant claims that the Appellate Court erred in dismissing his appeal for lack of a final judgment. He asserts that the order disbursing the funds terminated a proceeding separate and distinct from the underlying specific performance action and, therefore, is a reviewable final judgment. He further argues that this case is similar to appeals from decisions granting or denying prejudgment remedies, since in both cases, the appellant faces "irreparable harm" by losing his security.

The jurisdiction of the appellate courts is restricted to appeals from judgments that are final. General Statutes §§ 51-197a and 52-263; Practice Book § 4000; *Gold* v. *Newman,* 211 Conn. 631, 632–33, 560 A.2d 960 (1989); *Sasso* v. *Aleshin,* 197 Conn. 87, 90, 495 A.2d 1066 (1985). "The policy concerns underlying the final judgment rule are to discourage piecemeal appeals and

to facilitate the speedy and orderly disposition of cases at the trial court level. See *State* v. *Powell,* 186 Conn. 547, 551, 442 A.2d 939, cert. denied sub nom. *Moeller* v. *Connecticut,* 459 U.S. 838, 103 S. Ct. 85, 74 L. Ed. 2d 80 (1982)." *Burger & Burger, Inc.* v. *Murren,* 202 Conn. 660, 663, 522 A.2d 812 (1987); *State* v. *Paolella,* 210 Conn. 110, 120–21, 554 A.2d 702 (1989). The appellate courts have "a duty to dismiss, even on [their] own initiative, any appeal that [they lack] jurisdiction to hear." *Sasso* v. *Aleshin,* supra, 89. In some instances, however, it is unclear whether an order is an appealable final judgment. In the "gray area" between "judgments which are undoubtedly final and others that are clearly interlocutory"; *E. J. Hansen Elevator, Inc.* v. *Stoll,* 167 Conn. 623, 627, 356 A.2d 893 (1975); this court has adopted the following test, applicable to both criminal and civil proceedings: "An otherwise interlocutory order is appealable in two circumstances: (1) where the order or action terminates a separate and distinct proceeding, or (2) where the order or action so concludes the rights of the parties that further proceedings cannot affect them." *State* v. *Curcio,* 191 Conn. 27, 31, 463 A.2d 566 (1983).

The defendant's arguments, which implicate both prongs of the *Curcio* test; see, e.g., *State* v. *Parker,* 194 Conn. 650, 654, 656, 485 A.2d 139 (1984) ("separate and distinct" requirement is first prong); *Daginella* v. *Foremost Ins. Co.,* 197 Conn. 26, 31, 495 A.2d 709 (1985) (focus of second prong is on potential harm to appellant's rights); need not be addressed. As with setting aside a verdict, it is well established that an order opening a judgment ordinarily is not a final judgment within § 52-263. See *Sasso* v. *Aleshin,* supra, 90–91, and cases cited therein; *State* v. *Phillips,* 166 Conn. 642, 646, 353 A.2d 706 (1974); *Ostroski* v. *Ostroski,* 135

Conn. 509, 511, 66 A.2d 599 (1949). This court, however, has recognized an exception to this rule where the appeal "challenges the power of the court to act to set aside the judgment." *Connecticut Light & Power Co.* v. *Castle,* 179 Conn. 415, 418, 426 A.2d 1324 (1980); 4 Am. Jur. 2d, Appeal and Error § 126.

In the present case, the defendant raised in his preliminary statement of the issues on appeal[1] to the Appellate Court the question whether the trial court erred "in granting the Motion for Release of Escrow more than four months after the stipulated judgment was entered which created the escrow, *which Order in effect reopened the stipulated judgment* entered on May 27, 1987 . . . ." (Emphasis added.) See General Statutes § 52-212 (a); Practice Book § 326 (in civil cases, motion to open judgment must be made within four months after judgment rendered); *State* v. *Wilson,* 199 Conn. 417, 436–37, 513 A.2d 620 (1986) (trial court may not modify judgment in matters of substance more than four months after it is rendered). Thus, the defendant's appeal challenged the power of the court to open the judgment of May, 1987. Further, the plaintiff on certification has not attached any significance to the fact that the defendant appealed from the order of June, 1988, in which the trial court released the funds, rather than from the order of January, 1988, in which the court ordered the case placed back on the trial list. Indeed, the plaintiff herself concedes that the trial court's later ruling is "comparable" to that of an order opening a judgment, but argues that "[t]he rights of the defendant were not concluded by the trial court's order placing the matter back on the trial list." An order of the trial court opening a judgment is, under

[1] The Appellate Court dismissed the defendant's appeal before briefs were filed.

*Connecticut Light & Power Co.* v. *Costle,* supra, an appealable final judgment where the issue raised is the power of the trial court to open.

The judgment of the Appellate Court is reversed and the case is remanded to that court for further proceedings in accordance with this opinion.

In this opinion the other justices concurred.