MARY ELLEN PRITCHARD *v.* JAMES L. PRITCHARD
(SC 17615)

Borden, Norcott, Palmer, Vertefeuille and Zarella, Js.

Argued November 28, 2006—officially released February 13, 2007

*Robert D. Snook,* assistant attorney general, with whom, on the brief, were *Richard Blumenthal,* attorney general, and *Susan Quinn Cobb,* assistant attorney general, for the appellant (state).

*Albert Lau,* with whom was *David V. DeRosa,* for the minor children.

BORDEN, J. This is a certified appeal from the judgment of the Appellate Court dismissing the appeal of the state of Connecticut from certain orders of the Superior Court and the family support magistrate.[1] See *Pritchard* v. *Pritchard*, 92 Conn. App. 327, 885 A.2d 207 (2005). Upon full consideration of the briefs and arguments of the state and the attorney for the minor children, we conclude that the Appellate Court improperly dismissed the state's appeal. Accordingly, we reverse the judgment of that court and remand the case for consideration of the merits of the state's appeal.

The opinion of the Appellate Court sets forth the following facts and procedural history. "The plaintiff, Mary Ellen Pritchard, and the defendant, James L. Pritchard, were married on May 5, 1979. Two children were born of the marriage. On June 11, 1996, the parties were divorced. Pursuant to the judgment of dissolution, the defendant was ordered to pay, inter alia, child support in the amount of $180 per week and alimony in the amount of $100 per week. An alimony arrearage of $7549.80 was also found by the court, and the defendant told the court that he would continue to refuse to pay the delinquent alimony. In response, certain bank orders were issued. Nevertheless, on November 1, 1996,

---

[1] We granted the state's petition for certification to appeal limited to the following issue: "Did the Appellate Court properly dismiss the state's appeal?" *Pritchard* v. *Pritchard*, 277 Conn. 913, 895 A.2d 790 (2006).

"The state of Connecticut has authority to bring this appeal pursuant to, but not limited to, General Statutes § 46b-231 (t) (3) [and (u) (1)] . . . ." (Internal quotation marks omitted.) *Pritchard* v. *Pritchard*, 92 Conn. App. 327, 328 n.1, 885 A.2d 207 (2005). "The state has appealed on behalf of the support enforcement services [see General Statutes § 46b-207] which is acting on behalf of the plaintiff." *Pritchard* v. *Pritchard*, supra, 328–29 n.1. The attorneys for the minor children of the parties filed a statement in support of the attorney general's position in this certified appeal. The defendant, James L. Pritchard, did not file a brief nor did he appear at oral argument before this court.

pursuant to a motion for contempt, the court found the defendant to be in arrears $3600 in child support, $2000 in alimony and $303 in unreimbursed medical expenses. Finding the defendant in contempt, the court issued additional bank orders, transferring certain moneys to the plaintiff. Following the transfer of the bank funds to the plaintiff, which did not clear up the arrearage entirely, the court appointed an attorney for the defendant on March 31, 1997, finding that the defendant was in jeopardy of incarceration for his failure to comply with the orders of the court.

"In response to another motion for contempt filed by the plaintiff, the court, *Axelrod, J.*, on November 25, 1997, denied the motion because it concluded that the plaintiff, herself, had failed to comply with the orders of the court regarding the transfer of certain Florida property to the defendant and that her delay had caused the defendant to lose that portion of the property that the plaintiff had been ordered to transfer to him. The court did find, however, that the defendant owed an arrearage of $13,107.95, consisting of $1700 in alimony, $11,160 in child support and $247.95 in unreimbursed medical expenses. The court also stated that, pursuant to the terms of the judgment of dissolution, alimony had terminated on October 10, 1996, and the court ordered the payment on the arrearage to be $35 per week, with an increase as each child reached majority. On September 3, 1998, the plaintiff filed another motion for contempt, which was heard on September 8, 1998. After the defendant failed to appear for the hearing on the contempt motion, the court found that the arrearage was $27,608.70, and it issued a capias, finding the defendant in contempt.

"On July 3, 2000, a new capias was issued after it was discovered that the original had been lost. On September 12, 2002, the defendant was arrested and bond was set at $30,000. After setting the bond, the court,

*Rodriguez, J.*, referred the matter to the family support magistrate. On September 18, 2002, the family support magistrate, *John P. McCarthy*, found the defendant in contempt and set a purge figure of $65,588.70, the amount of the support arrearage. The defendant continued to be brought before the court on a monthly basis for review of the contempt finding. On April 2, 2003, the magistrate increased the defendant's purge amount to $70,628.70 and also set a bond of $10,000.

"On April 23, 2003, the defendant filed a motion for contempt against the plaintiff, alleging that her failure to transfer the Florida property in a timely matter amounted to a fraudulent conveyance.[2] On July 30, 2003, during one of the monthly reviews of the defendant's incarceration on the contempt finding, the magistrate found that property owned by the defendant in Bethel had been fraudulently transferred to the defendant's companion, Suzanne Spellman, and the magistrate ordered that the defendant could be released if Spellman placed a mortgage on the property to secure a lien in the name of the plaintiff and then sold the property and paid the plaintiff. On November 26, 2003, the magistrate lowered the defendant's purge amount to zero and set a bond of $30,000. On December 4, 2003, the state filed a motion for reconveyance of the Bethel property with the Superior Court.[3] On December 15, 2003, Spell-

[2] "The state argues that this motion was withdrawn on May 12, 2003. Although there is a notation to that effect at the bottom of the motion, the case detail sheet does not show that this motion was withdrawn." *Pritchard* v. *Pritchard*, supra, 92 Conn. App. 332 n.2.

[3] "The court case detail sheet shows this motion, no. 185, as having been filed on December 4, 2003. The motion in the court's file, however, contains three different date stamps, one on November 14, 2003, one on November 26, 2003, and the last on December 4, 2003. The order to show cause itself also shows that it was signed on November 19, 2003, by Judge Mintz, ordering Spellman and the defendant to appear on December 15, 2003, to show cause why the motion should not be granted. The notice of lis pendens was filed with the Bethel town clerk on November 24, 2003, a certified copy of which is contained in the court file." *Pritchard* v. *Pritchard*, supra, 92 Conn. App. 332 n.3.

man and the defendant appeared before the Superior Court for a hearing on the motion for reconveyance. On January 7, 2004, the magistrate lowered the defendant's bond to $5000, and set another review date for the following week, January 14, 2004.

"On January 12, 2004, after a hearing on the state's motion for reconveyance, the court, *Shay, J.*, ordered the defendant released from custody and vacated [the finding of an arrearage] the capias, the bond and all prior findings of contempt.[4] The court also suspended the payment of child support and continued the matter until April 19, 2004. The state filed an appeal from the January 12 [2004] judgment." *Pritchard* v. *Pritchard*, supra, 92 Conn. App. 330–32. The state claimed on appeal that the trial court lacked authority under General Statutes §§ 46b-231 (q)[5] and 46b-86[6] to vacate the prior orders issued by the Superior Court and the family support magistrate when the defendant had not appealed from or otherwise challenged those orders. "Subsequently, on April 26, 2004, the trial court found

---

[4] The trial court stated at the January 12, 2004 hearing that it was "vacating the previous order of contempt, nunc pro tunc. There is no contempt. . . . There is an arrearage that is to be determined, and we're going to set up a hearing . . . to determine . . . the proper arrearage as of [September 8, 1998, the date of the original arrearage order]." The court further ordered that the defendant "be freed forthwith."

[5] General Statutes § 46b-231 (q) provides: "When an order for child or spousal support has been entered against an obligor by the Superior Court in an action originating in the Superior Court, such order shall supersede any previous order for child or spousal support against such obligor entered by a family support magistrate and shall also supersede any previous agreement for support executed by such obligor and filed with the Family Support Magistrate Division."

[6] General Statutes § 46b-86 (a) provides in relevant part: "Unless and to the extent that the decree precludes modification . . . any final order for the periodic payment of permanent alimony or support . . . may at any time thereafter be continued, set aside, altered or modified by said court upon a showing of a substantial change in the circumstances of either party . . . ."

that the defendant had fraudulently transferred the Bethel property to Spellman, but stayed enforcement until it could recalculate the amount of arrearage." Id., 332–33.

On August 24, 2004, the trial court issued a memorandum of decision in which it reiterated its January 12, 2004 orders, recalculated the amount of arrearage and ordered the defendant to make certain payments. Id., 333. The court explained that it had vacated the September 8, 2002 contempt order because "the original court order did not comport with the fundamentals of due process . . . ." With respect to its ruling vacating the arrearage order, the court recognized that the defendant had never filed a motion for modification. It concluded, however, that it was "equitable and appropriate" to treat the defendant's April 23, 2003 motion for contempt[7] against the plaintiff for her failure to comply with orders concerning the transfer of the Florida properties as a motion to reopen the September 8, 1998 judgment, because the defendant "consistently contended that the loss of the Florida real estate was somehow tied to his child support obligation . . . ." Accordingly, the court concluded that it was authorized to vacate the finding of contempt and to modify the existing child support orders. The state then filed an amended appeal from that decision, indicating that the original judgment was the one rendered on January 12, 2004. Attached to the amended appeal was an amended preliminary statement of issues in which the state raised two new issues related to the August 24, 2004 ruling.

The Appellate Court dismissed the state's appeal for lack of a final judgment. See *Pritchard* v. *Pritchard,*

---

[7] The trial court referred to the defendant's "March 5, 2003" motion for contempt. The motion was signed by the defendant on March 5, 2003, but was listed on the case detail sheet as having been filed on April 23, 2003.

supra, 92 Conn. App. 340. The court noted that the trial court "specifically ordered the parties to come before it for another hearing on April 19, 2004, at which time it intended to take evidence on the defendant's ability to meet his financial obligations." Id., 339. The Appellate Court concluded, therefore, that "the January [12, 2004] rulings did not terminate a separate and distinct proceeding or so conclude the rights of the parties that further proceedings could not affect them, as contemplated by *State* v. *Curcio*, [191 Conn. 27, 31, 463 A.2d 566 (1983)]"; *Pritchard* v. *Pritchard*, supra, 338–39; and, therefore, did not constitute an appealable final judgment.[8] The Appellate Court further concluded that the appeal from the January 12, 2004 ruling was moot in light of the trial court's subsequent ruling on August, 24, 2004, because "[a] reversal of the January 12, 2004 judgment would have no effect on the August 24, 2004 judgment . . . ." *Pritchard* v. *Pritchard*, supra, 340. The Appellate Court also concluded that the state had failed to appeal from the later judgment. Id.

---

[8] Before reaching this conclusion, the Appellate Court stated that "[t]he state's motion for reconveyance was not a *separate* action or a *new* action; it was a motion filed in this case, with the same docket number as the pending case. . . . The state fails to recognize . . . that the filing of its motion placed this case squarely back on the regular docket of the Superior Court, which, in considering the merits of the state's motion, had to review the case in its entirety." (Emphasis in original.) *Pritchard* v. *Pritchard*, supra, 92 Conn. App. 336. "The court, as the basis for its authority to act in this situation, relied on § 46b-231 (q), which gives the Superior Court the authority to supersede any previous orders for support where an action, such as the present action, originated in the Superior Court. See also *Santoro* v. *Santoro*, 70 Conn. App. 212, 214 n.1, 797 A.2d 592 (2002) (plaintiff's motion to open judgment of family support magistrate not necessary because Superior Court has jurisdiction to modify family support magistrate's child support order pursuant to § 46b-231 [q]). No objection was raised by the state, the attorney for the minor child or the attorney for Spellman as to the court's ruling." *Pritchard* v. *Pritchard*, supra, 338. Immediately after making this statement, the Appellate Court reached its conclusion that "the January rulings did not terminate a separate and distinct proceeding or so conclude the rights of the parties that further proceedings could not affect them . . . ." Id., 338–39.

The state claims on appeal to this court that the Appellate Court improperly: (1) dismissed its appeal for lack of a final judgment; and (2) determined that its appeal from the January 12, 2004 ruling was moot in light of the trial court's August 24, 2004 ruling and that the state had failed to appeal from that ruling. The state argues that the trial court's January 12, 2004 ruling was a final judgment under *Curcio* and that it properly had amended the original appeal to include the August 24, 2004 ruling. We conclude that the January 12, 2004 ruling constituted a final judgment for purposes of appeal and that the state complied with the procedures for amending that appeal to include the August 24, 2004 ruling.

As a preliminary matter, we set forth the standard of review. "The lack of a final judgment implicates the subject matter jurisdiction of an appellate court to hear an appeal. A determination regarding . . . subject matter jurisdiction is a question of law . . . [and, therefore] our review is plenary." (Internal quotation marks omitted.) *Sweeney* v. *Sweeney*, 271 Conn. 193, 207, 856 A.2d 997 (2004).

"The jurisdiction of the appellate courts is restricted to appeals from judgments that are final. General Statutes §§ 51-197a and 52-263; Practice Book § [61-1] . . . . The policy concerns underlying the final judgment rule are to discourage piecemeal appeals and to facilitate the speedy and orderly disposition of cases at the trial court level. . . . The appellate courts have a duty to dismiss, even on [their] own initiative, any appeal that [they lack] jurisdiction to hear. . . . In some instances, however, it is unclear whether an order is an appealable final judgment. In the gray area between judgments which are undoubtedly final and others that are clearly interlocutory . . . this court has adopted the following test, applicable to both criminal and civil proceedings: An otherwise interlocutory order

is appealable in two circumstances: (1) where the order or action terminates a separate and distinct proceeding, or (2) where the order or action so concludes the rights of the parties that further proceedings cannot affect them. *State* v. *Curcio*, [supra, 191 Conn. 31].￼" (Citations omitted; internal quotation marks omitted.) *Solomon* v. *Keiser*, 212 Conn. 741, 745–46, 562 A.2d 524 (1989).

It is well established that the opening of a prior judgment is not a final appealable judgment when a substitute judgment is contemplated but has not yet been rendered. See id., 746; see also *Sasso* v. *Aleshin*, 197 Conn. 87, 91, 495 A.2d 1066 (1985) (opening of prior judgment of arrearage is not final judgment when court has not entered new judgment setting amount of arrearage); *State* v. *Phillips*, 166 Conn. 642, 646, 353 A.2d 706 (1974) (when court did not render substitute order for support order that was set aside, there was no final judgment); *Ostroski* v. *Ostroski*, 135 Conn. 509, 511–12, 66 A.2d 599 (1949) (opening of divorce judgment was not final judgment when court had not rendered substitute judgment in case). "This court, however, has recognized an exception to this rule where the appeal challenges the power of the court to act to set aside the judgment." (Internal quotation marks omitted.) *Solomon* v. *Keiser*, supra, 212 Conn. 747. That was precisely the challenge raised by the state in its appeal to the Appellate Court.[9] See *Pritchard* v. *Pritchard*, supra,

---

[9] We note that it is unclear whether, in reaching its conclusion that the trial court's ruling vacating the arrearage and contempt orders was not a final appealable judgment, the Appellate Court intended to address the substance of the state's claim on appeal that the trial court had acted without authority. The Appellate Court appears to have done so in one portion of its opinion; see *Pritchard* v. *Pritchard*, supra, 92 Conn. App. 334–38 (appearing to conclude that trial court's ruling vacating prior orders was not final judgment because court had authority to supersede previous orders under § 46b-231 [q] and, therefore, ruling did not terminate separate proceeding or conclude rights of parties); see also footnote 8 of this opinion; but that court expressly declined to do so in other portions of the opinion; see *Pritchard* v. *Pritchard*, supra, 333 (expressly declining to determine whether trial court had authority to vacate prior orders because January 12, 2004

92 Conn. App. 333 (state claimed that trial court lacked authority to intercede in support matter pending before family support magistrate); id., 339 (state claimed that trial court lacked authority to vacate contempt finding and to suspend support obligation). Accordingly, the trial court's ruling vacating all of the prior orders of the Superior Court and the family support magistrate was a final judgment for purposes of appeal under *Solomon.*

Moreover, we conclude that the trial court's ruling vacating the prior contempt and capias orders and the bond, and ordering the immediate release of the defendant from prison, would constitute a final appealable judgment under the second prong of *State* v. *Curcio,* supra, 191 Conn. 31, even if there were no claim that the court's action was unauthorized. The trial court stated unequivocally at the January 12, 2004 hearing that it was "vacating the previous order of contempt, nunc pro tunc." We interpret this language to mean that the court intended to void the contempt order and related orders ab initio. The court gave no indication that it intended merely to place the parties in the situation that they had been in after the plaintiff had filed her original motion for contempt, but before the trial court had granted it. Instead, the court clearly intended to place the parties in the position that they would have been in if the original motion had been denied. Thus, this situation is not like the cases in which the court vacated a prior judgment but had not yet rendered a substitute judgment, because no substitute judgment was contemplated. Rather, the trial court's action immediately and permanently terminated the established

ruling became moot when state purportedly failed to appeal from August 24, 2004 ruling); id., 339 (same). Because the opinion of the Appellate Court is unclear, and because the issue of the trial court's authority to vacate the prior orders was not raised or briefed in this certified appeal, we decline to address that issue.

rights of the state in the orders so that no further proceeding could affect them. *State* v. *Curcio*, supra, 31; cf. *Potter* v. *Board of Selectmen*, 174 Conn. 195, 196, 384 A.2d 369 (1978) (denial of motion for contempt is final judgment for purposes of appeal). Accordingly, we conclude that the January 12, 2004 ruling vacating the arrearage order, the contempt order and related orders was a final judgment and, therefore, the Appellate Court improperly dismissed the state's appeal from that ruling.

We next address the state's claim that the Appellate Court improperly determined that its appeal from the January 23, 2004 ruling was moot because the trial court's August 24, 2004 ruling had superseded the earlier ruling and the state had failed to appeal from the later ruling. The state argues that it followed the procedure set forth in Practice Book § 61-9[10] for amending its appeal to include the later ruling, and, even if it completed the amended appeal form improperly, any defect was technical. We conclude that the way in which the state filled out the amended appeal form did not deprive the Appellate Court of jurisdiction.

The following additional facts and procedural history are relevant to this claim. The state filed an amended appeal form on September 13, 2004. The form indicated that the "judgment date" was January 12, 2004, and the "date for filing extended appeal" was September 13, 2004, which was twenty days after the August 24, 2004 ruling. The form did not, however, specifically state the

[10] Practice Book § 61-9 provides in relevant part: "Should the trial court, subsequent to the filing of the appeal, make a decision which the appellant desires to have reviewed, the appellant shall file an amended appeal form in the trial court within twenty days from the issuance of notice of the decision as provided for in Section 63-1. At the time the amended appeal form is filed, the appellant shall submit a copy thereof, endorsed in accordance with Section 63-3, to the appellate clerk together with any amendments to the documents required by Section 63-4. . . ."

date of the ruling from which the appeal was being taken. Along with the amended appeal form, the state filed an amended preliminary statement of issues containing three issues. The third issue was "[w]hether the Superior Court properly applied the federal minimum wage rate instead of . . . Connecticut's minimum wage in its decision to deviate from the Connecticut child support guidelines and input earning capacity."[11] In its August 24, 2004 ruling, the trial court had, for the first time, indicated that the defendant's earning capacity would be based upon the federal minimum wage. The state's amended appeal also attached an amended preliminary designation of pleadings that listed the August 24, 2004 ruling as a pleading that it deemed "necessary for proper presentation of the issues" and an amended draft judgment file setting forth the date and substance of the August 24, 2004 ruling.

The Appellate Court stated, in support of its conclusion that the state had failed to appeal from the August 24, 2004 ruling, that "[t]he state, although filing an amended appeal form, did not appeal from the later judgments. The only judgment from which an appeal was taken, as stated on the amended appeal form, is the judgment dated January 12, 2004, and that form lists, as the specific action from which the state appeals, the 'decision of the [S]uperior [C]ourt to intercede in an action pending before the [f]amily [s]upport [m]agistrate.' As such, any claim regarding the propriety of the actions of the court taken after January 12, 2004, cannot be addressed in this appeal. See *Rocque* v. *DeMilo & Co.*, 85 Conn. App. 512, 526–27, 857 A.2d 976 (2004)." *Pritchard* v. *Pritchard*, supra, 92 Conn. App. 333 n.4.

At the outset, we set forth the standard of review. Whether the state properly invoked the jurisdiction of the Appellate Court is a question of law subject to

---

[11] This issue was abandoned in the state's brief to the Appellate Court.

plenary review. See *Rayhall* v. *Akim Co.*, 263 Conn. 328, 337, 819 A.2d 803 (2003). "[I]n determining whether a court has subject matter jurisdiction, every presumption favoring jurisdiction should be indulged." (Internal quotation marks omitted.) Id., 339. Furthermore, the forms for appeals and amended appeals do not in any way implicate appellate subject matter jurisdiction. They are merely the formal, technical vehicles by which parties seek to invoke that jurisdiction. Compliance with them need not be perfect; it is the substance that matters, not the form. See *State* v. *Findlay*, 198 Conn. 328, 329 n.2, 502 A.2d 921, cert. denied, 476 U.S. 1159, 106 S. Ct. 2279, 90 L. Ed. 2d 721 (1986).

In order to address the state's claim that it complied with the procedure for filing an amended appeal pursuant to Practice Book § 61-9, it is necessary to review the requirements of the amended appeal form filed by the state, Form JD-SC-28, Rev. 2-99, which is the same form used in filing original appeals. The form provides a space for the "judgment date," but does not specify in the case of amended appeals whether the appellant should provide the date of the original judgment or the date of the judgment that is the subject of the amended appeal. The form also provides a space to describe the "action which constitutes the final judgment," but, again, does not specify which judgment should be described in the case of an amended appeal. Accordingly, we conclude that it was not unreasonable for the state to conclude that the phrases "judgment date" and "action which constitutes the final judgment" were intended to refer to the original judgment.

Moreover, it was clear from the attached amended preliminary statement of issues and the draft judgment file that the amended appeal could have related only to the August 24, 2004 ruling, and the attached amended docketing statement expressly listed that ruling as one of the pleadings "necessary for the proper presentation

of the issues." If there was any doubt about the ruling to which the amended appeal referred, that question was never raised by either the defendant or the Appellate Court after the amended appeal was filed. Moreover, the Appellate Court did not explain in its opinion, and we cannot conceive, to what ruling the amended appeal form could have been intended to refer if not to the August 24, 2004 ruling. We conclude, therefore, that, viewing the substance of the state's amended appeal, it invoked the Appellate Court's jurisdiction regarding that ruling.

In support of its conclusion to the contrary, the Appellate Court relied on *Rocque* v. *DeMilo & Co.*, supra, 85 Conn. App. 512. That case involved a challenge by the defendants to four interlocutory orders entered by the trial court on motions filed by the plaintiff in an action alleging violations of various environmental statutes. Id., 514. The orders were a December 19, 2002 order overruling the defendants' objection to a motion to substitute a defendant, a January 16, 2003 order granting the plaintiff's motion to dismiss the counterclaim, a June 23, 2003 order granting the plaintiff's motion to withdraw as to one of the defendants, and a February 14, 2002 order granting the plaintiff's motion to withdraw certain counts of the complaint. Id., 526–27. The defendants had filed an appeal on January 29, 2003, in which they indicated that they were challenging the December 19, 2002 and the January 16, 2003 orders, and then filed an amended appeal on June 30, 2003, in which they indicated that they were challenging the June 23, 2003 order. Id. Subsequently, the defendants claimed that the trial court improperly had granted the February 14, 2002 order. Id. The Appellate Court specifically noted that the "claim was not raised in the defendants' preliminary statement of issues, but appears for the first time in their appellate brief." Id., 528 n.10. The court concluded that, because the defendants had not filed an appeal

form indicating that they intended to appeal from that order, it lacked jurisdiction over the claim. Id., 527–28. The court recognized that, "[i]n accordance with our policy not to exalt form over substance, we have been reluctant to dismiss appeals for technical deficiencies in an appellant's appeal form." Id., 527. It concluded, however that it was "confronted in the present case . . . with a defect of substantive dimension that implicates this court's jurisdiction to entertain the claim." Id.

We conclude that the present case is distinguishable from *Rocque*. In *Rocque*, the defendants did not give any indication that they intended to challenge the subject order until they filed their appellate brief. As we have indicated, a fair reading of the amended appeal papers filed by the state in the present case clearly indicates that the state intended to appeal from the August 24, 2004 ruling. Accordingly, we conclude that the Appellate Court improperly dismissed the state's appeal as moot.

The judgment of the Appellate Court is reversed and the case is remanded to that court to consider the merits of the state's appeal.

In this opinion the other justices concurred.