******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

BARBARA LEVINE *v.* 418 MEADOW STREET
ASSOCIATES, LLC, ET AL.
(AC 36919)

Sheldon, Keller and Flynn, Js.

*Argued October 13, 2015—officially released March 15, 2016*

(Appeal from Superior Court, judicial district of
Fairfield, Tyma, J.)

*Michael S. Lynch*, for the appellants (plaintiff and
counterclaim defendant).

*Andrew M. McPherson*, with whom, on the brief, was
*William J. Kupinse, Jr.*, for the appellees (defendants).

*Opinion*

FLYNN, J. The plaintiff and counterclaim defendant, Barbara Levine, and the counterclaim defendant, Steven Levine, appeal from the judgment of the trial court,[1] in favor of the defendants and counterclaim plaintiffs, 418 Meadow Street Associates, LLC (Meadow), Michael Weinshel, and Mark Wynnick.[2] Barbara and Steven Levine claim that the court erred by denying their motions to set aside, and for remittitur of, the jury verdict. We conclude that despite any perceived imperfections in the appeal form, we have jurisdiction to adjudicate this appeal, and on the basis of the limited record before us, that the appellants have not shown that the court abused its discretion in denying their motions. Therefore, we affirm the judgment of the trial court.

The record reveals the following procedural history and facts which the jury reasonably could have found. The underlying action arose out of the ownership of a commercial building located at 418 Meadow Street in Fairfield (property). Barbara Levine and her husband, Steven Levine, formed the limited liability company, Meadow, in November, 1998, for the purpose of acquiring and operating the property, which included an income-producing building. Barbara and Steven Levine were each 50 percent members of Meadow at the time of its formation; Meadow's only asset was the property. On or about June 1, 2005, Weinshel and Wynnick collectively purchased Steven Levine's 50 percent interest in Meadow, thereby becoming members with Barbara Levine. Weinshel purchased 33.33 percent of Meadow at a cost of $222,400.46, and Wynnick purchased 16.66 percent at a cost of $41,666.67.

Prior to and subsequent to the time Weinshel and Wynnick became members of Meadow, it had tenants which were associated with Steven Levine.[3] After June, 2005, Meadow began having difficulty collecting rents from those tenants. Steven Levine subsequently filed for bankruptcy in October, 2005.

The members agreed to a Restated Operating Agreement for Meadow designating Weinshel and Steven Levine as comanagers. The agreement required the members' approval of all leases. The relationship between the Levines and Weinshel and Wynnick deteriorated during and after 2005, due to disagreements regarding management and operations of the building. Steven Levine signed a lease as comanager of Meadow with One Solution Services, LLC (One Solution), effective July 1, 2006. However, he represented to Weinshel and Wynnick that there was not a current lease between Meadow and One Solution, but rather that negotiations were continuing regarding a new lease. Meanwhile, although Meadow was attempting to collect unpaid rent from One Solution as a holdover tenant, Steven Levine

directed One Solution's bookkeeper to ignore requests from Weinshel and Wynnick for payment of rent to Meadow.

Meadow subsequently brought actions against the aforementioned tenants to obtain rents owed, which Barbara Levine opposed. Meadow brought two separate actions against One Solution for nonpayment of rents and received judgments of $41,000 and $60,000 against One Solution, which remained unsatisfied. Evidence introduced during trial demonstrated that One Solution owed Meadow $82,451.48. Meadow also brought an action against Steven Levine for wrongful withholding of security deposits, and received a judgment of $20,762.83 plus costs of $139.40. Barbara Levine also executed affidavits for the purpose of assisting One Solution and Steven Levine to open judgments entered against them in favor of Meadow. Additionally, Meadow brought an action against Clean Air Group, Inc. (Clean Air) for payment of rent, but at the time of trial in the present action there was no judgment entered in the case. Evidence introduced during this trial demonstrated that Clean Air owed Meadow $100,048.57. Meadow also brought an action against Eco Ion Technologies, LLC, resulting in a settlement agreement under which Meadow was to receive $50,000. However, Meadow received only $30,000 and placed a garnishment on Clean Air to secure the remaining $20,000, but Clean Air did not pay Meadow any money related to the garnishment.

The property was initially valued between $3.4 million and $3.55 million, and was subject to a mortgage of approximately $2.5 million held by People's Bank. Meadow subsequently defaulted on the mortgage for the property, and, ultimately in May, 2008, Meadow's interest in the property was extinguished when the bank obtained a foreclosure judgment against Meadow and a sale was ordered. An appraisal performed on May 28, 2009, valued the property at $2 million at the time the final foreclosure judgment was entered. In December, 2009, the property sold at a foreclosure sale for $1,550,000.

The action that generated the counterclaims at issue in this appeal was commenced in September, 2007, when Barbara Levine brought suit seeking dissolution of Meadow and claimed money damages, alleging that Weinshel and Wynnick breached fiduciary duties owed to her, and that as a result she suffered damages. Weinshel and Wynnick denied the claims and filed counterclaims against Barbara and Steven Levine, claiming that the Levines breached fiduciary and other duties owed to them, causing them to suffer money damages. In their amended counterclaims, Weinshel and Wynnick alleged breaches of fiduciary duty, breaches of statutory duties under General Statutes § 34-141, and violation of the Connecticut Unfair Trade Practices Act (CUTPA),

General Statutes § 42-110a et seq. Barbara Levine filed a second amended complaint against the defendants on September 24, 2012, in which she sought dissolution of Meadow and a winding up of the affairs of the company. Barbara also alleged that Weinshel and Wynnick breached the covenant of good faith and fair dealing and their fiduciary duties owed to her under the operating agreement.[4]

Following trial, the jury returned its verdict and found against Barbara Levine on her breach of fiduciary duty claims as well as her breach of the covenant of good faith and fair dealing claims. The jury further found for Weinshel and Wynnick on their counterclaims that Barbara and Steven Levine breached fiduciary duties as well as statutory duties owed to them under § 34-141, but rejected their CUPTA counterclaim against the Levines. The jury awarded damages to Weinshel and Wynnick in the amounts of $222,400 and $41,667, respectively, on their breach of fiduciary duty and statutory duty claims.

Barbara and Steven Levine subsequently filed a motion to set aside the verdict and a motion for remittitur of the verdict, to which the defendants filed objections. The court, *Tyma, J.*, denied both motions without issuing written memoranda of decision. This appeal followed.

I

As a preliminary matter, the defendants argue that we should decline to review Barbara and Steven Levine's appeal because they have not properly invoked this court's jurisdiction. The defendants assert that this court lacks jurisdiction because Barbara and Steven Levine did not file an appeal form indicating that they sought review of the court's decisions denying their motions to set aside the verdict and for remittitur of the verdict. We disagree and conclude that this court has jurisdiction to review this appeal.

Because the subject matter jurisdiction of this court is challenged, we commence our review by addressing that claim. "Whenever a claim of lack of jurisdiction is brought to the court's attention, it must be resolved before the court can proceed." *Gallant* v. *Cavallaro*, 50 Conn. App. 132, 134, 717 A.2d 283, cert. denied, 247 Conn. 936, 722 A.2d 1216 (1998), cert. denied, 528 U.S. 1005, 120 S. Ct. 500, 145 L. Ed. 2d 386 (1999). "It is axiomatic that unless the jurisdiction of this court is properly invoked, we cannot exercise our appellate jurisdiction." *Rocque* v. *DeMilo & Co.*, 85 Conn. App. 512, 527, 857 A.2d 976 (2004). "[I]n determining whether a court has subject matter jurisdiction, every presumption favoring jurisdiction should be indulged." (Internal quotation marks omitted.) *Pritchard* v. *Pritchard*, 281 Conn. 262, 275, 914 A.2d 1025 (2007).

"The right to an appeal is not a constitutional one. It

is but a statutory privilege available to one who strictly complies with the statutes and rules on which the privilege is granted." *Chanosky* v. *City Building Supply Co.*, 152 Conn. 449, 451, 208 A.2d 337 (1965). However, our Supreme Court stated in *Pritchard* v. *Pritchard*, supra, 281 Conn. 275, that "the forms for appeals and amended appeals do not in any way implicate appellate subject matter jurisdiction. They are merely the formal, technical vehicles by which parties seek to invoke that jurisdiction. Compliance with them need not be perfect; it is the substance that matters, not the form." Cf. *Rocque* v. *DeMilo & Co.*, supra, 85 Conn. App. 527 (claim not listed on appeal form but raised initially in appellate brief distinguished from technical defect and considered "a defect of substantive dimension that implicates this court's jurisdiction to entertain the claim").

The appeal form, JD-SC-28, indicates that the appeal is taken from the "motion to dismiss granted in favor of defendants (see jury verdict (#174), memorandum of decision (#196); and judgment of dismissal (#197)." Although the appeal form does not indicate that Barbara and Steven Levine have appealed from the court's decisions denying the motions to set aside the verdict or for remittitur, their intention to appeal from those decisions was made clear in the preliminary statement of issues filed with this court. That preliminary statement of issues included, in relevant part: "Did the trial court err in failing to set aside the jury verdict where the damages awarded to the counterclaim plaintiffs Michael Weinshel and Mark Wynnick were not supported by the evidence at trial, and were not in conformance with Connecticut law of damages."

"In accordance with [its] policy not to exalt form over substance, [our Supreme Court has] been reluctant to dismiss appeals for technical deficiencies in an appellant's appeal form. See *State* v. *Findlay*, 198 Conn. 328, 329 n.2, 502 A.2d 921, cert. denied, 476 U.S. 1159, 106 S. Ct. 2279, 90 L. Ed. 2d 721 (1986) (disregarding error on appeal form mistakenly indicating that appeal was being taken from jury verdict rather than judgment, concluding that defect in form is not jurisdictional in nature); see also *Brown* v. *Rosen*, 36 Conn. App. 206, 210, 650 A.2d 568 (1994) (disregarding appellant's failure to indicate on appeal form that appeal was being taken from final judgment)." *Rocque* v. *DeMilo & Co.*, supra, 85 Conn. App. 527. Barbara and Steven Levine referenced the jury verdict itself on the appeal form, which can be interpreted as an intention to appeal from the judgment. See *State* v. *Kurvin*, 186 Conn. 555, 556 n.1, 442 A.2d 1327 (1982) ("[a]lthough the defendant purported to appeal from the verdict rather than the judgment as required by General Statutes § 52-263, this defect in form not being jurisdictional in nature . . . may be disregarded" [citation omitted]).

In *Pritchard* v. *Pritchard*, supra, 281 Conn. 275–76,

our Supreme Court held that although the wrong judgment date was listed on the appeal form, it was clear from the attached amended preliminary statement of issues that the appeal was intended to be taken from the correct judgment date. The court distinguished *Rocque* v. *DeMilo & Co.*, supra, 85 Conn. App. 527, noting that in *Rocque*, the "claim was not raised in the defendants' preliminary statement of issues, but appear[ed] for the first time in their appellate brief." (Internal quotation marks omitted.) *Pritchard* v. *Pritchard*, supra, 275. Here, as in *Pritchard*, the intent of Barbara and Steven Levine to appeal from the court's decision denying their motion to set aside the verdict was apparent from the preliminary statement of issues. See id., 262. It is a fair inference from what the Levines did state in their preliminary statement of issues, namely, that the verdict was not in accordance with the evidence at trial, that if the entire verdict were not set aside, that they sought review of their motion for remittitur, claiming that its amount should at least be lessened. In *State* v. *Lanasa*, 141 Conn. App. 685, 687 n.1, 62 A.3d 572, cert. denied, 308 Conn. 945, 66 A.3d 885 (2013), although the appeal form indicated that the defendant was appealing from the denial of a motion for waiver of fees and costs, which is not an appealable judgment, subject matter jurisdiction existed on appeal because it was clear from the preliminary statement of issues that the defendant was challenging the judgment of conviction. Therefore, despite the imprecise language used on the appeal form, viewing the substance of Barbara and Steven Levine's amended appeal, they have sufficiently invoked this court's jurisdiction, and we will review their claims on appeal.

II

We next turn to the merits of the Levines' appeal. They claim that the court erred by denying their motions to set aside, and for remittitur of, the jury verdict. We are not persuaded.

We first address the defendants' argument that the record for reviewing Barbara and Steven Levine's claims is inadequate. The defendants argue that the trial court's judgment should be affirmed because the case of *Murcia* v. *Geyer*, 151 Conn. App. 227, 230, 93 A.3d 1189, cert. denied, 314 Conn. 917, 100 A.3d 406 (2014), is analogous to the present case. We agree that *Murcia* is relevant to our inquiry, however, we disagree that the record is so inadequate as to prevent review. Instead, as in *Murcia*, we review the appellants' claims on the limited record provided. See id., 231 n.1. Given our duty to make every reasonable presumption in favor of the correctness of the court's decision; id., 231; our review of the limited record before us leads us to conclude that the court acted reasonably and did not abuse its discretion in denying their motions to set aside, and for remittitur of, the verdict.

In the present case, we do not decline to review Barbara and Steven Levine's claims, rather we review the claims on the record provided. See id. Nor is our resolution founded solely upon the failure of Barbara and Steven Levine to seek an articulation, but also upon their failure to procure memoranda of decision.[5] See id.

When reviewing both a motion to set aside the verdict and a motion for remittitur, the trial judge must review the evidence from the viewpoint of sustaining the verdict. *Saleh* v. *Ribeiro Trucking, LLC*, 303 Conn. 276, 281, 32 A.3d 318 (2011); *Kregos* v. *Stone*, 88 Conn. App. 459, 468, 872 A.2d 901, cert. denied, 275 Conn. 901, 882 A.2d 672 (2005). On such an appeal, "the conclusion of the trial court from the vantage point of the trial bench cannot be disturbed unless there is a clear abuse of discretion. . . . An appellate court cannot retry the facts of a case or pass upon the credibility of the witnesses. . . . The trial court's refusal to set aside a verdict is entitled to great weight and every reasonable presumption should be given in favor of its correctness. . . . If, on the evidence, the jury could reasonably have decided as they did, [the reviewing court] will not find error in the trial court's acceptance of the verdict . . . ." (Citations omitted; internal quotation marks omitted.) *Malmberg* v. *Lopez*, 208 Conn. 675, 679, 546 A.2d 264 (1988).

Appellate review of motions for remittitur is even more restrictive. Remittitur should be both rare and exceptional. "[R]eview of the trial court's grant of remittitur is dictated by, on the one hand, the high bar that must be met before a trial judge may set aside a jury verdict, and, on the other hand, the necessarily broad authority that the trial judge has to oversee the trial process. The right of trial by jury is of ancient origin, characterized by Blackstone as the glory of the English law and the most transcendent privilege which any subject can enjoy . . . . [Our Supreme Court has] repeatedly . . . stated that the award of damages, in particular, is a matter peculiarly within the province of the trier of facts. . . . For that reason, [our Supreme Court has] consistently . . . held that a court should exercise its authority to order a remittitur rarely—only in the most exceptional of circumstances." (Citations omitted; internal quotation marks omitted.) *Saleh* v. *Ribeiro Trucking, LLC*, supra, 303 Conn. 280.

When considering a motion to set aside a verdict, *Malmberg* teaches us that the evidence before the jury is vital. See *Malmberg* v. *Lopez*, supra, 208 Conn. 679–80. There was abundant evidence from which the jury could have concluded that Barbara and Steven Levine engaged in a long pattern of self-dealing and obstructive conduct that frustrated the purpose of successfully operating Meadow, whose sole purpose was the ownership of the single commercial building. There was also evidence from which a jury might have concluded that

the defendants, Weinshel and Wynnick, lost investments of $222,400.46 and $41,666.67, respectively, which were irretrievable when the property that was Meadow's sole asset was foreclosed by People's Bank.

In *Murcia*, this court stated that "pursuant to Practice Book § 64-1 (a), the court was required to state, either orally or in writing, a decision that encompassed its conclusion as to each claim of law raised by the parties and the factual basis therefor. . . . If an oral decision is rendered, a signed transcript of the oral decision should be created and filed for use in any appeal. If the court fails to file an oral or written decision, the appellant, who has the duty to provide an adequate record for appellate review; see Practice Book § 61-10; must file a notice to that effect with the appellate clerk in accordance with Practice Book § 64-1 (b)." (Internal quotation marks omitted.) *Murcia* v. *Geyer*, supra, 151 Conn. App. 230. In the present case, the court's denial of Barbara and Steven Levine's motions to set aside, and for remittitur of, the verdict thereby rendering judgment in accordance with the jury verdict, constituted an appealable issue pursuant to General Statutes § 52-263.[6] Similar to *Murcia*, the court in this case did not file written memoranda of decision explaining its rulings on Barbara and Steven Levine's motions, nor did it prepare and sign a transcript of any oral rulings. See id. Also analogous to *Murcia*, Barbara and Steven Levine failed to file a notice with the appellate clerk's office pursuant to Practice Book § 64-1, or a motion requesting the court to articulate the factual and legal basis for its ruling. See id.; see also Practice Book § 66-5.

This court, in *Murcia*, concluded that although "the record . . . include[d] the trial transcript, [it could not] readily identify any portion of it that encompasse[d] the court's factual findings with respect to the defendants' claim . . . ." *Murcia* v. *Geyer*, supra, 151 Conn. App. 230. In any review of a motion to set aside the verdict and/or a motion for remittitur, given the deference our standard of review requires to the trial court's decision, it is especially important to know what evidence before the jury justified the verdict in the court's mind. Similar to *Murcia*, in the present case, although we have the trial transcript, there is no indication of the specific facts which the court found reasonably supported the denial of Barbara and Steven Levine's motions to set aside, and for remittitur of, the verdict.[7] See id.

The essence of the defendants' claim briefed on appeal is that the jury could not have awarded damages for the defendants' capital contributions to Meadow because the complaint only referenced, in all of its counts, losses due to the foreclosure of Meadow's property by People's Bank, and the value of the property at the time of foreclosure was less than the amount of the mortgage at the time of foreclosure. However, it was possible for the jury to have found that Meadow's prop-

erty became less valuable, not enough rent was collected to satisfy mortgage payments, and the property was subsequently foreclosed because of the self-dealing and obstructive behavior of Barbara and Steven Levine. The jury also could have concluded that the defendants, Weinshel and Wynnick, lost the entire amount of their investments in Meadow when the property was foreclosed. Therefore, it would have been reasonable for the jury to conclude that absent the self-dealing and obstructive behavior of Barbara and Steven Levine, Meadow's property might not have been foreclosed, and the defendants, Weinshel and Wynnick, would not have lost their investments in Meadow.

We are "[c]ognizant that we must make every reasonable presumption in favor of the correctness of the court's decision . . . ." Id., 230–31. Therefore, on the basis of our review of the limited record provided to us, we conclude that the Levines have not shown that the court acted unreasonably or abused its discretion in denying their motions to set aside, and for remittitur of, the verdict thereby rendering judgment in favor of the defendants on their counterclaims, in accordance with the jury verdict. See id., 231.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The defendants, who were also counterclaim plaintiffs, originally filed a cross appeal, but later withdrew it.

[2] Although both Weinshel and Wynnick were also counterclaim plaintiffs, we refer to them throughout the opinion as the defendants.

[3] The tenants associated with Steven Levine were (1) One Solution Services, LLC, (One Solution), (2) Clean Air Partners, LLC, now known as Clean Air Group, Inc., (Clean Air), and (3) Eco Ion Technologies, LLC (Eco). Prior to filing for bankruptcy, Steven Levine had an ownership interest in Indoor Air Quality Partners, LLC, which had an ownership of 34 percent in Eco. Steven Levine also had an ownership interest in One Solution, which he sold to third parties, who then sold to his father. Although it is unclear what Steven Levine's job title was at One Solution, from 2005, until the date of foreclosure, he received compensation and loans from One Solution. Steven Levine has an ownership interest of approximately 20 percent in Clean Air, and also received compensation from Clean Air from 2005, until the date of the foreclosure.

[4] These claims were tried to a jury before the court, *Tyma, J.*, in September, 2012, and the parties and court agreed that the statutory dissolution claims would be tried at a later date to the court. In November, 2013, the defendants filed a motion to dismiss the remaining counts of the complaint, which the court granted on May 16, 2014. Those claims are not at issue in this appeal.

[5] "Pursuant to Practice Book § 61-10, which was amended October 18, 2012, to take effect January 1, 2013, this court will not decline to review a claim on appeal solely on the basis of a party's failure to seek an articulation. See Practice Book § 61-10 (b). As stated in the commentary to the rule, however, the new subsection (b) that was created by the amendment was not intended to preclude this court from declining to review an issue where the record is inadequate for reasons other than solely the failure to seek an articulation, such as, for example, the failure to procure the trial court's decision pursuant to [Practice Book §] 64-1 (b) . . . . Practice Book § 61-10, commentary. . . . *Gordon* v. *Gordon*, [148 Conn. App. 59, 68 n.10, 84 A.3d 923 (2014)].

"The new subsection also in no way alters the responsibility of an appellant to ensure that the appellate record is perfected for proper presentation of all claims raised. See *Macricostas* v. *Kovacs*, 67 Conn. App. 130, 133, 787 A.2d 64 (2001) (The duty to provide this court with a record adequate for review rests with the appellant. . . . It is incumbent upon the appellant to take the necessary steps to sustain its burden of providing an adequate record

for appellate review. Practice Book § [60-5] . . . . It is not the function of this court to find facts. . . . Our role is . . . to review claims based on a complete factual record developed by a trial court. . . . Without the necessary factual and legal conclusions furnished by the trial court . . . any decision made by us respecting [the defendant's claims] would be entirely speculative. . . . Where the transcript does not reveal the basis of the court's factual conclusion, we will not review the appellant's claims. . . .

"In the present case, we do not decline to review the defendants' claim, rather we review the claim on the record provided. Nor is our resolution founded solely upon the defendants' failure to seek an articulation, but upon their failure to procure a memorandum of decision." (Citation omitted; emphasis omitted; internal quotation marks omitted.) *Murcia* v. *Geyer*, supra, 151 Conn. App. 231 n.1.

[6] General Statutes § 52-263 states: "Upon the trial of all matters of fact in any cause or action in the Superior Court, whether to the court or jury, or before any judge thereof when the jurisdiction of any action or proceeding is vested in him, if either party is aggrieved by the decision of the court or judge upon any question or questions of law arising in the trial, including the denial of a motion to set aside a verdict, he may appeal to the court having jurisdiction from the final judgment of the court or of such judge, or from the decision of the court granting a motion to set aside a verdict, except in small claims cases, which shall not be appealable, and appeals as provided in sections 8-8 and 8-9."

[7] At oral argument before this court, counsel for Barbara and Steven Levine made the following representations about matters that Judge Tyma had put on the record. "And Judge Tyma made it very clear that he thought the jury did a very good job. He thought they got it right, and he said that on the record. And so he said he's going to deny the motions for that reason. He thought the jury did a very good job and they got it right. . . . [Judge Tyma] explained only that he thought that the jury awarded damage where damage wasn't—was appropriate under the circumstances. He thought the jury fairly assessed the situation and did not agree with me that only a nominal damage should be awarded." However, we were not provided with a transcript or record of any of this.

Barbara and Steven Levine supplied records of the trial in the Superior Court for the following dates: September 19, 2012; September 20, 2012; September 25, 2012; September 27, 2012; September 28, 2012; and October 2, 2012. All of these dates preceded the dates of the motions to set aside, and for remittitur of, the verdict, which were both dated October 12, 2012. We were provided no transcripts for proceedings in the Superior Court before Judge Tyma after October 12, 2012, that would shed light on his reasoning for refusing to set aside the verdict and denying any remittitur of its amount.