## STATE OF CONNECTICUT *v.* SANDRA LANASA
### (AC 34156)

Lavine, Robinson and Schaller, Js.

Argued January 8—officially released April 2, 2013

*Vincent J. Dooley,* for the appellant (defendant).

*Laurie N. Feldman,* special deputy assistant state's attorney, with whom were *Andrew J. Slitt,* assistant state's attorney, and, on the brief, *Patricia M. Froehlich,* state's attorney, for the appellee (state).

*Opinion*

ROBINSON, J. The defendant, Sandra Lanasa, appeals from the judgment of conviction, rendered after a jury trial, of one count of illegal sexual contact with a child in violation of General Statutes § 53-21 (a) (2) and one count of risk of injury to a child in violation

of General Statutes § 53-21 (a) (1).[1] On appeal, the defendant claims that the court improperly (1) granted the state's request for a continuance and (2) instructed the jury when it failed (a) to give a credibility instruction and (b) to inform the jury of its right to view a trial exhibit. We affirm the judgment of the trial court.

In a long form information, the defendant was charged with one count of sexual assault in the second degree in violation of General Statutes § 53a-71 (a) (1),

---

[1] We note that the defendant's appeal form and the judgment file both indicate that the defendant is appealing from the denial of her motion for waiver of fees and costs, which was filed on December 9, 2011, nearly four months after she was sentenced. Not only was the motion for waiver of fees and costs late; see Practice Book §§ 63-7 ("[a]ny defendant in a criminal case who is indigent . . . may, within the time provided by the rules for taking an appeal, make written application to the court . . . for relief from payment of fees, costs and expenses") and 63-1 (a) ("an appeal must be filed within twenty days of the date notice of the judgment . . . is given"); but also the denial of a motion for waiver of fees is not appealable. The "[d]enial of a motion for waiver of fees is not an appealable final judgment. Review of such a denial is properly sought in a motion for review" pursuant to Practice Book § 66-6. *Cortes* v. *Cotton*, 31 Conn. App. 569, 570 n.2, 626 A.2d 1306 (1993); see also Practice Book § 63-7 ("[t]he sole remedy of any defendant desiring the court to review an order concerning the waiver of fees, costs and security . . . shall be by motion for review under Section 66-6"). It is clear, however, from her preliminary statement of the issues submitted with her appeal form that the defendant is challenging the judgment of conviction, which is an appealable final judgment. We do not condone the actions of the defendant, however, we will consider her appeal on the merits. See *Brown* v. *Rosen*, 36 Conn. App. 206, 210, 650 A.2d 568 (1994) (denying motion to dismiss appeal on ground of lack of final judgment where appeal form improperly indicated appeal from order that was not final judgment, but clear from preliminary statement of issues that appellant did appeal final judgment); cf. *Rocque* v. *DeMilo & Co.*, 85 Conn. App. 512, 527–28, 857 A.2d 976 (2004) (dismissing claims where challenged ruling not indicated on appeal form and raised for first time in appellate brief).

Moreover, the state failed to object to the late filing or improper appeal form and submitted a substantive response to the defendant's brief. Thus, any defect has been waived by the state. See *Froom Development Corp.* v. *Developers Realty, Inc.*, 114 Conn. App. 618, 624–25, 972 A.2d 239 (improper appeal form), cert. denied, 293 Conn. 922, 980 A.2d 909 (2009); *Rubenstein* v. *Rubenstein*, 107 Conn. App. 488, 498–99, 945 A.2d 1043 (untimely appeal), cert. denied, 289 Conn. 948, 960 A.2d 1037 (2008).

one count of illegal sexual contact with a child in violation of § 53-21 (a) (2) and one count of risk of injury to a child in violation of § 53-21 (a) (1). On February 21, 2009, the defendant engaged in inappropriate sexual contact at her home with the victim, a classmate of her daughter who was fifteen years old at the time of the incident. After a jury trial, the defendant was found not guilty of sexual assault, but guilty of illegal sexual contact with a child and risk of injury to a child. Subsequently, she was sentenced to an effective term of ten years of incarceration, execution suspended after one year, and ten years of probation. This appeal followed. Additional relevant facts will be set forth as necessary.

I

The defendant first claims that the court improperly granted the state's request for a continuance so that the victim could be present for closing arguments. She argues that the prosecutor's seeking a continuance on behalf of the victim was improper advocacy in excess of her authority, statutorily and under the rules of professional conduct, and thus, prosecutorial impropriety in violation of the defendant's due process rights.[2] The defendant additionally maintains that the court erred in granting the continuance because the victim did not have standing to request a continuance, the rights of the victim are not absolute and the court improperly equated the victim's rights with the defendant's rights.

We begin with our standard of review. "A motion for continuance is addressed to the discretion of the trial court, and its ruling will not be overturned absent a showing of a clear abuse of that discretion. . . . Every reasonable presumption in favor of the proper exercise

_____

[2] The defendant argues, in the alternative, that if the prosecutorial impropriety does not rise to the level of a due process violation, then this court should nevertheless invoke its supervisory authority over the administration of justice and order a new trial.

of the trial court's discretion will be made. . . . In deciding whether to grant a continuance, the court of necessity balances several factors, including the importance of effective case flow management and the relative harm or prejudice to both parties. . . . Absent a showing of actual prejudice, the court will not be found to have abused its discretion when [granting a party's] motion for a continuance." (Citations omitted; internal quotation marks omitted.) *Irving* v. *Firehouse Associates, LLC*, 82 Conn. App. 715, 719–20, 846 A.2d 918 (2004).

The following additional facts and procedural history are necessary to resolve this claim. On the second day of trial, May 26, 2011, the state rested. After the court had excused the jury, it noted that the defendant would "have an opportunity to present a defense tomorrow, if [she] chooses to do so." It denied the state's motion in limine to preclude testimony of the defendant's expert witness and ordered the defendant to produce her expert the next day. The court noted that it had been very clear that all parties had to make efforts to produce their witnesses and that as "a practical matter, the case needs to be done as soon as practical because the state of Connecticut and defense counsel are prepared to proceed on [another] evidentiary matter . . . next week on Wednesday [June 1, 2011] . . . . So we do need to proceed tomorrow, and I'm expecting everybody to be ready."

The next day, on Friday, May 27, 2011, the defendant rested. When the state inquired about scheduling for the rest of the day, the court indicated that it would proceed with a charging conference, closing arguments and the charge to the jury. At that point, the prosecutor requested that closing arguments not go forward because the victim's advocate had an outstanding medical appointment and would not be available for the

victim. The court noted that no other courtroom would be available the next week due to a scheduled trial.

After a brief recess, another prosecutor, who had been working with the prosecutor trying the case, addressed the court and argued for the continuance. She requested that oral arguments be scheduled for Wednesday, June 1, 2011, at 2 p.m. to allow the victim to be present. She argued that if the defendant had presented a defense, closing arguments necessarily would have been scheduled for June 1 because defense counsel had represented that the defendant's case would take approximately two days, Monday, May 30, 2011, was a holiday and the prosecutor trying the case had indicated that he would not be available on Tuesday, May 31, due to a commitment in federal court. Furthermore, she maintained, the victim was not available that afternoon due to a school event out of the state and had a constitutional statutory right to be present.

The court remarked that "it [is] important to observe, obviously, the rights of the victims, as well, and to no lesser extent the rights of the accused. . . . We're at a point where the defense rested without presenting a defense, and certainly [although] the court, and all parties anticipated a potential expert . . . it is the [defendant's] right to not present a defense . . . ."

Defense counsel then argued against the continuance. She first pointed out that the state had notice that the defendant did not know if she would present a defense until after hearing the state's witnesses and determining what documents might be admitted for cross-examination. She stated that "a delay in this trial would result in abridging the rights of the defendant." Defense counsel maintained that everyone was aware of the scheduling and the need to move forward and that the state should have made appropriate provisions

to accommodate the victim advocate's medical appointment. When the court asked defense counsel to put aside the victim advocate's availability and to focus on the victim's availability, she stated that "[h]is rights don't usurp the defendant's in a criminal trial . . . ." She argued that everyone should have been aware that the case could have concluded that day and maintained that the defendant relied on the court's scheduling orders when deciding whether to present a defense. She continued, stating that "[t]he decision that [the defendant] made not to present evidence, and to rest, was based on a trial schedule, knowing that the information would be fresh in the jurors' minds . . . ." Defense counsel asserted that the defendant had a right to a conclusion of the hearing, that there was no reason why the victim was excused during trial when other witnesses were not and that everyone knew that the defendant had not yet decided whether to put on a defense. She concluded by stating that "it hurts [the defendant] to put the jury on ice now. I think all of the information is now fresh in their mind[s]. I think they're focused. I think they're ready. . . . And I believe, Your Honor, that it's unreasonable to, where it's not an emergency situation, to accommodate other people's schedules above the defendant's right to the trial."

In an oral decision, the court granted the state's request for a continuance. It noted that jury selection had taken several days and that the proceedings had been interrupted, to an extent, when one of the witnesses had to interrupt his testimony in order to comply with a subpoena duces tecum. The court gave the defendant the option of reopening her case, if she chose to do so, to produce witnesses. Stating that it held "very serious the rights of the accused in obtaining a fair trial, having this case decided by a jury of her peers," the court nevertheless reasoned that "other than a claim that somehow it's prejudicial to the defense, the court

really has [no] basis upon which to make a finding [of] prejudice, or harm, to the accused. On the other hand, given what this court infers was clearly a surprising schedule to the complaining witness . . . [t]here is reasonable cause to understand why the complaining witness is not here today, and the court cannot turn a blind [eye] to the victim statute. [The court] also observe[s], very seriously, the rights of the accused. It's not a question of one individual's rights trumping another, it's a question of weighing all the variables, and above all ensur[ing] a fair trial to [the defendant]." Finally, the court observed for the record that it did not find that "the defendant's rights [were] impeded by virtue of the delay."

Although the defendant has detailed the ways in which she feels that the court abused its discretion in granting the continuance, she has not demonstrated how she was actually harmed by the continuance or explained how the outcome of the trial would have been different had the court denied the request for a continuance. Thus, the defendant has not shown actual prejudice. See *Irving* v. *Firehouse Associates, LLC*, supra, 82 Conn. App. 720. Accordingly, we conclude that the court did not abuse its discretion in granting the state's request for a continuance.

## II

The defendant also claims that the court improperly instructed the jury in two ways: (1) the court failed to instruct the jury about the credibility of the victim given his age and immaturity and (2) the court failed to adequately inform the jury of its right to view a trial exhibit that was accessible only by computer. We disagree with both claims.

"We begin with the well established standard of review governing the defendant's challenge to the trial court's jury instruction. Our review of the defendant's

claim requires that we examine the [trial] court's entire charge to determine whether it is reasonably possible that the jury could have been misled by the omission of the requested instruction. . . . While a request to charge that is relevant to the issues in a case and that accurately states the applicable law must be honored, a [trial] court need not tailor its charge to the precise letter of such a request. . . . If a requested charge is in substance given, the [trial] court's failure to give a charge in exact conformance with the words of the request will not constitute a ground for reversal. . . . As long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . we will not view the instructions as improper. . . . Additionally, we have noted that [a]n [impropriety] in instructions in a criminal case is reversible . . . when it is shown that it is reasonably possible for [improprieties] of constitutional dimension or reasonably probable for nonconstitutional [improprieties] that the jury [was] misled." (Internal quotation marks omitted.) *State* v. *Devalda*, 306 Conn. 494, 505–506, 50 A.3d 882 (2012).

A

The defendant first claims that the court failed to instruct the jury regarding the credibility of the victim given his age and immaturity. According to the defendant, the victim falls under one of the exceptions to the general rule against instructing juries about the credibility of specific witnesses and that it was appropriate for the court to have done so in this case because the victim could have been subject to school and parental discipline. We disagree.

The following additional facts are necessary to resolve this claim. At the charging conference, defense counsel asked the court to accept her charge regarding

the credibility of the victim's testimony.[3] The state objected, arguing that it created an inappropriate suggestion that the victim was less credible. The court agreed, stating that the "language would be an inaccurate statement suggesting a lack of trustworthiness by virtue of . . . age, and I do think the court's request to charge on the issue of credibility of all the witnesses is sufficient without this particular charge."[4]

---

[3] The defendant's requested charge stated in relevant part: "No witness' testimony is inherently less worthy of belief simply because of the age of the witness. In this case the complaining witness . . . is alleged to have been between the ages of [thirteen] and [sixteen]. If the [s]tate proves that fact beyond a reasonable doubt you may consider, after weighing all of the evidence, the fact that the United States Supreme Court and our [s]tate Supreme Court have found that persons under the age of [eighteen] years may lack maturity and are more reckless than adults. A lack of responsibility and an underdeveloped sense of responsibility may be found in youth more often than adults which may lead to a lack of appreciation for the consequences of their actions which is a factor you may consider in determining [the complaining witness'] credibility."

[4] The court charged the jury twice, once inadvertently before closing arguments and again after closing arguments. With the exception of stating, "A word about credibility of the witnesses," during the second charge, both charges were given as follows: "In deciding what the facts are you must, of course, consider all the evidence. In doing this you must decide which testimony to believe and which testimony not to believe. You may believe all, none, or any part of any witness testimony. In making that decision you may take into account a number of factors, including the following: Was the witness able to see or hear or know of the things about which that witness testified? How well was the witness able to recall and describe those things? What was the witness' manner while testifying? Did the witness have an interest in the outcome of this case, or any bias or prejudice concerning any party, or any matter involved in the case? How reasonable was the witness' testimony when considered in light of all of the evidence in the case? And was the witness' testimony contradicted by what that witness has said or done at another time, or by the testimony of other witnesses or by other evidence?

"If you believe that a witness has deliberately testified falsely in some respect you should carefully consider whether you should rely upon any of his or her testimony. Whether you credit a witness' testimony in whole, or in part, or not at all, is solely for you the jury to determine using your experience, knowledge of human nature, common sense, and awareness of the motives which influence and control human nature.

"In deciding whether or not to believe a witness, keep in mind that people sometimes forget things. You need to consider therefore whether a contradiction is an innocent lapse of memory or an intentional falsehood

"Generally, a [criminal] defendant is not entitled to an instruction singling out any of the state's witnesses and highlighting his or her possible motive for testifying falsely. . . . [Our Supreme Court] has held, however, that a special credibility instruction is required for three types of witnesses, namely, complaining witnesses, accomplices and jailhouse informants." (Citation omitted; internal quotation marks omitted.) *State* v. *Diaz*, 302 Conn. 93, 101–102, 25 A.3d 594 (2011). "Under the complaining witness exception, when the complaining witness [himself] could . . . have been subject to prosecution depending only upon the veracity of his account of [the] particular criminal transaction, the court should . . . [instruct] the jury in substantial compliance with the defendant's request to charge to determine the credibility of that witness in the light of any motive for testifying falsely and inculpating the accused. . . . In order for [such a] request to be applicable to the issues in the case, there must be evidence . . . to support the defendant's assertion that the complaining witness was the culpable party." (Citation omitted; internal quotation marks omitted.) *State* v. *Patterson*, 276 Conn. 452, 467–68, 886 A.2d 777 (2005).

The defendant concedes that the victim would not have been subject to criminal liability as a result of his involvement in the incident. Nevertheless, she urges us to conclude that a specific instruction on the credibility of the victim was warranted because he could have faced suspension from school, discipline from his parents or a delinquency referral if the allegations were proven to be false. We decline to do so. A specific charge about the complaining witness is only appropriate when

that may depend on whether it has to do with an important fact or with only a small detail. You may consider testimony on both direct and cross-examination in deciding whom to believe in this case. These are some of the factors you may consider in deciding whether to believe testimony. You may consider all the evidence in the case. It is the quality of the evidence, not the quantity of the evidence, which you should consider."

there is evidence that he could have been subject to criminal prosecution. See *State* v. *Patterson*, supra, 276 Conn. 467–68. The victim could not have been subject to criminal charges in this case. At best, the defendant speculates that the victim might have been disciplined in some way. Such speculative actions do not require a special jury instruction. Accordingly, we conclude that it was not reasonably probable that the jury would be misled due to the court's refusal to instruct the jury specifically regarding the victim's credibility due to his age and immaturity at the time of the incident.

B

The defendant also claims that the court failed to adequately inform the jury about its right to view a trial exhibit that was accessible only by computer. She argues that the court's interruption during her closing argument was unwarranted and that its later instruction added to the confusion, making it reasonably probable that the jury was misled. We disagree.

The following additional facts are necessary to resolve this claim. During the cross-examination of one of the state's witnesses, state police Trooper Max Freyer, the defendant introduced as a full exhibit a computer disk that contained four documents that were comprised of the victim's cell phone records. During closing argument, defense counsel examined the contents of the disk with the jury and three times made comments that the jury would have access to the documents on the disk during deliberations. After the third remark, the court interrupted her closing argument and noted that the disk, but not a computer was in evidence. When defense counsel stated that she thought that the court would provide a computer, the court remarked that the issue had not been discussed, but that "if the jury were to request such an item that the issue could be taken up."

After closing arguments had concluded, defense counsel inquired as to whether a computer would be available for the jury to review the disk that was in evidence. The court directed defense counsel to discuss the matter with the court clerk's office, noting that "if that scenario should arise, any laptop [computer] that goes to the jury I would like to think is going to have to be clean of material, and have some type of safeguard to prevent improper information to going to the finder of fact."

The next day, defense counsel presented a laptop computer that had been purchased the previous night, with only Adobe software installed on it, and requested that it be allowed in the deliberation room. The state objected, arguing that a computer should have been obtained through the clerk's office and that defense counsel should have addressed the issue earlier if she intended to introduce the computer into the jury room. Defense counsel responded that a computer was the only way that the jury could view the evidence, that the clerk's office did not have an available computer and that the court could mark the computer as a court exhibit so that it would remain in the custody of the court.

After remarking that defense counsel had shown the jury the contents of the disk during closing arguments, that the jury was told that it could request anything that it needed, that the court would be inclined to grant a request for a computer and that the defendant had offered the disk by itself, the court denied defense counsel's request to put the computer in the deliberation room absent a request by the jury.

Defense counsel then asked that the jury be instructed that they could have access to a computer because the court interrupted her during her closing argument and there was discussion in front of the jury

about the availability of a computer. The prosecutor did not object to a general instruction letting the jury know that it could request anything it needed, but did object to highlighting particular evidence. Defense counsel then asked if the court could "inform the jury that if there's anything that they need to assist them in reviewing the evidence to send a letter out to you." The court subsequently informed the jury that "[s]hould you have a need for anything, or a request, again I advise you to write a note, hand it to the marshal, and we will take that up, if we can assist you and respond." The jury did not request to view the disk.

"It is well established that . . . [i]n properly instructing the jury it may or may not be necessary for the court to recall the attention of the jury to the evidence . . . or to comment [on] the evidence or [to] express an opinion as to its weight . . . . In reviewing whether the trial court must comment on any evidence that has been presented, we examine not only the entire jury charge . . . but also the presentation of the issues to the jury by counsel in the context of the trial. Within constitutional limitations concerning trial by jury, the nature and extent of the trial court's comments on the evidence must largely depend on the facts involved in a particular case and the manner in which it has been tried. . . . The extent to which a court should comment on the evidence is largely a matter within its sound discretion. . . . In some cases, where the issues are complicated, peculiar, or capable of differing conclusions, comment by the court is necessary. On the other hand, if the issues are clearly enumerated and the argument of counsel has fairly presented the case, a discussion in the charge of the details of the evidence may defeat its proper purpose." (Citation omitted; internal quotation marks omitted.) *State* v. *Flores*, 301 Conn. 77, 98–99, 17 A.3d 1025 (2011).

In the present case, the evidence related to the charges was not particularly complicated as they arose from one incident. Defense counsel extensively reviewed the contents of the disk during cross-examination of Freyer and reviewed it during her closing argument. During its jury charge, the court noted three times that the jury would have all of the exhibits during its deliberations and that the jury must consider all evidence, including exhibits. Additionally, during defense counsel's closing argument, the court indicated, in the presence of the jury, that it would take up the issue of a computer if the jury requested to view the exhibit. The court's jury instructions, when examined as a whole and in the context of the entire trial, sufficiently guided the jury. Therefore, we conclude that, given the circumstances of the case, the court did not abuse its discretion by refusing to instruct the jury specifically as to the availability of a computer to view the exhibit. We also conclude that it was not reasonably probable that the jury was misled by the court's instructions.

The judgment is affirmed.

In this opinion the other judges concurred.