******************************************

The "officially released" date that appears near the be-
ginning of each opinion is the date the opinion will be pub-
lished in the Connecticut Law Journal or the date it was
released as a slip opinion. The operative date for the be-
ginning of all time periods for filing postopinion motions
and petitions for certification is the "officially released"
date appearing in the opinion.

All opinions are subject to modification and technical
correction prior to official publication in the Connecticut
Reports and Connecticut Appellate Reports. In the event of
discrepancies between the advance release version of an
opinion and the latest version appearing in the Connecticut
Law Journal and subsequently in the Connecticut Reports
or Connecticut Appellate Reports, the latest version is to
be considered authoritative.

The syllabus and procedural history accompanying the
opinion as it appears in the Connecticut Law Journal and
bound volumes of official reports are copyrighted by the
Secretary of the State, State of Connecticut, and may not
be reproduced and distributed without the express written
permission of the Commission on Official Legal Publica-
tions, Judicial Branch, State of Connecticut.
******************************************

# KARLA WOLFORK, ADMINISTRATRIX (ESTATE OF DAEONTE WOLFORK-PISANI) *v.* YALE MEDICAL GROUP ET AL.
## (SC 20344)

Robinson, C. J., and Palmer, McDonald,
D'Auria, Kahn and Ecker, Js.

*Syllabus*

The plaintiff, W, who had been appointed by the Probate Court as administratrix of the estate of her deceased son, D, sought to recover damages on behalf of D's estate from the defendants, various health care providers, for medical negligence. Approximately three years after W commenced the action, the trial court issued a notice indicating that the case had been reported settled and ordered the parties to file any withdrawals or motions for stipulated judgment by a certain date or the case would be dismissed. At around the same time, the Probate Court appointed D's father, P, as coadministrator of D's estate. W failed to file the withdrawal by the deadline, and the court issued a second notice, again ordering the parties to file the necessary paperwork. W successfully sought an extension of time to file the withdrawal for the purpose of scheduling a hearing with the Probate Court and P to confirm that she had the authority to unilaterally withdraw the action. W failed to file the withdrawal by the extended deadline, however, and the trial court dismissed the action. Thereafter, P moved to open and vacate the judgment of dismissal, claiming that he had been prevented from requesting a further extension of time to withdraw or pursue the action due to mistake, accident or fraud. Specifically, P claimed that, at the time W commenced the action, she had misrepresented to the Probate Court that she was unaware of any pending litigation and that, after the Probate Court ordered W to turn over the case file to P for the hearing that W had requested, P expected that the action would remain pending and open until after the hearing. P also claimed that, in light of the ongoing issues in the Probate Court, W's failure to request additional extensions of time within which to file the withdrawal was a result of mistake or accident, and that W's counsel was aware of these circumstances but nonetheless failed to request an extension of time. Finally, P indicated that the Probate Court had removed W as administratrix of D's estate and appointed P as the sole administrator, with the authority to handle all litigation. The defendants objected to P's motion, claiming that P lacked standing because he was not a party to the action and had not filed a motion to be substituted as the plaintiff, and that P's motion to open did not comply with the statutory (§ 52-212) requirements that the motion be verified by oath and demonstrate both that a good cause of action existed and that W had been prevented from prosecuting the action due to mistake, accident or other reasonable cause. Thereafter, P filed a supplemental motion to open and vacate, claiming that a fraud had been committed, in that he believed a settlement had been reached, without the Probate Court's knowledge or authorization, and D's estate should have received the settlement proceeds. The defendants responded that no settlement payments had been made and that P had not alleged that the defendants had participated in the alleged fraud. The trial court, without explanation, granted P's motion to open and vacate the judgment of dismissal, and the defendants appealed. The trial court thereafter issued an articulation, stating that it was substituting P, as administrator of D's estate, as the plaintiff, and finding that the filing of the withdrawal had been prevented by reasonable cause, namely, the proceedings in the Probate Court removing W as administratrix of D's estate. On appeal, the defendants claim that the trial court improperly granted P's motion to open and vacate the judgment of dismissal because he lacked standing, the motion failed to comply with § 52-212, and any fraud had been perpetrated by W rather than the defendants. *Held*:

1. This court lacked jurisdiction over the defendants' claims that the trial court improperly granted P's motion to open and vacate the judgment on the grounds that the motion failed to comply with § 52-212 and the

alleged fraud had been perpetrated by W rather than the defendants, as those claims did not raise a colorable challenge to the trial court's jurisdiction to adjudicate the motion but, rather, challenged the trial court's common-law and statutory authority to grant the motion, and, therefore, this court dismissed that portion of the defendants' appeal relating to those claims for lack of a final judgment: although this court has recognized a limited exception to the rule that the granting of a motion to open renders a trial court's judgment nonfinal and, therefore, not an appealable final judgment, that exception applies only when the issue that the appellant raises involves a colorable challenge to the jurisdiction of the trial court to open the judgment, and the exception does not apply when the issue involves a claim that the trial court improperly exercised its jurisdiction to open the judgment under the applicable statutes, rules of practice, or common-law principles; in the present case, the defendants' claims concerning whether P's motion complied with § 52-212 and who perpetrated the alleged fraud challenged only the trial court's exercise of its jurisdiction, requiring this court to dismiss the appeal as to those claims for lack of a final judgment, whereas the defendants' claim that P lacked standing to move to open and vacate the judgment of dismissal raised a colorable challenge to the trial court's jurisdiction and, therefore, was reviewable on appeal.

2. The defendants could not prevail on their claim that P lacked standing to move to open and vacate the judgment of dismissal on the ground that P was not a party to the action: although P was not the named plaintiff when the trial court rendered judgment dismissing the action, the original plaintiff, W, was removed as administratrix of D's estate, and P was appointed as the sole administrator with full legal authority to prosecute all actions that had been initiated by W on behalf of D's estate, and, as the replacement administrator, P stepped into the shoes of W and acquired all of her rights and responsibilities, including her aggrievement stemming from the dismissal of the present action; moreover, once the judgment was opened, the trial court properly substituted P as the plaintiff in accordance with the statute (§ 45a-242 (e)) providing that all actions brought by a fiduciary, including the administrator of an estate, shall survive to be prosecuted by the person appointed to succeed such fiduciary.

Argued November 15, 2019—officially released April 22, 2020*

*Procedural History*

Action to recover damages for, inter alia, medical malpractice, and for other relief, brought to the Superior Court in the judicial district of New Haven, where the court, *Abrams*, *J.*, rendered judgment dismissing the action; thereafter, the court granted the motion filed by Damian Pisani, administrator of the estate of Daeonte Wolfork-Pisani, to open and vacate the judgment, and the defendants appealed to the Appellate Court; subsequently, the court, *Abrams*, *J.*, substituted Damian Pisani, administrator of the estate of Daeonte Wolfork-Pisani, as the plaintiff; thereafter, the appeal was transferred to this court. *Appeal dismissed in part*; *further proceedings*.

*Brock T. Dubin*, with whom, on the brief, was *Colleen Noonan Davis*, for the appellants (defendants).

*Karen E. Haley*, for the appellee (substitute plaintiff Damian Pisani).

*Opinion*

ECKER, J. The defendants, Yale Medical Group, Yale School of Medicine, Yale-New Haven Hospital, Inc., and Yale New Haven Health System, appeal from the order of the trial court granting the motion of the substitute plaintiff, Damian Pisani (Pisani), to open and vacate the trial court's final judgment of dismissal for failure to prosecute the present action with reasonable diligence under Practice Book § 14-3.[1] The defendants contend that the trial court improperly opened the judgment pursuant to General Statutes § 52-212[2] and Practice Book § 17-43[3] because (1) Pisani was not a party to the action and, therefore, lacked standing, (2) the motion was not verified by oath, did not demonstrate that a good cause of action existed, and did not establish reasonable cause to excuse the failure to prosecute the action with reasonable diligence, and (3) "there [was] absolutely no claim of fraud on the part of the present defendants." We dismiss the defendants' appeal in part because we conclude that appellate jurisdiction exists only with respect to the defendants' challenge to the subject matter jurisdiction of the trial court to open the judgment on the ground of Pisani's alleged lack of standing. We reject the defendants' standing claim and, therefore, uphold the trial court's determination with respect to the issue of standing.

In October, 2010, the decedent, Daeonte Wolfork-Pisani, the eleven year old son of Pisani and the plaintiff, Karla Wolfork, died while hospitalized at Yale-New Haven Hospital. The Probate Court appointed the plaintiff as the administratrix of the decedent's estate, and, in February, 2013, the plaintiff, in her representative capacity, filed a medical negligence action against the defendants on behalf of the decedent's estate. The trial court issued a scheduling order requiring the plaintiff to disclose her expert witnesses on or before December 1, 2014. The trial court informed the parties that they "may modify any of the deadlines contained in [the scheduling] order by mutual agreement, except the trial management conference date and trial date set by the court, which shall not be modifiable under any circumstances." The trial court subsequently modified the scheduling order and extended the filing deadline for the plaintiff's expert witness disclosures to August 15, 2015.

The plaintiff failed to disclose any expert witnesses. Approximately two months prior to trial, the defendants moved for an order precluding the plaintiff from offering expert testimony, claiming that such testimony would prejudice their defense. The trial court deferred ruling on the defendants' motion.

The trial did not go forward as scheduled, and, in May, 2016, the trial court issued a notice indicating that "the . . . case has been reported settled. Counsel and/

or pro se parties are ordered to file all necessary withdrawals and/or motions for stipulated judgment with the clerk's office on or before [June 28, 2016] . . . . Failure to do so will result in dismissal of the case." No withdrawal was filed. The trial court issued a second notice, this time ordering the parties "to file all necessary withdrawals and/or motions for stipulated judgment" on or before July 28, 2016, with the same admonition that the failure to file a timely withdrawal "will result in dismissal of the case."

On July 28, 2016, the plaintiff filed a motion for an extension of time to file a withdrawal. In her motion, the plaintiff explained that, "[o]n May 26, 2016, the Probate Court . . . appointed . . . Pisani, [the decedent's] biological father, as coadministrator of the estate. While there is no dispute over [the plaintiff's] consent to file the withdrawal by the current due date of July 28, 2016, out of an abundance of caution, [the plaintiff] would like to schedule a hearing with the . . . Probate Court so there is no issue over [the plaintiff's] authority to unilaterally withdraw the case without consent from . . . Pisani and/or a decree from the Probate Court." The trial court granted the plaintiff's motion and extended the deadline to file a withdrawal to August 29, 2016.

The plaintiff again failed to file a withdrawal within the allotted time. On September 29, 2016, the trial court sua sponte dismissed the action pursuant to Practice Book § 14-3 "for failure to file a withdrawal of [the] action within the time period allotted by the court." The trial court issued a final judgment of dismissal and notified the parties that, "[u]nless otherwise provided by law and except in such cases in which the court has continuing jurisdiction, a motion to open [the] judgment of dismissal must be filed within four months succeeding the date on which notice was sent. ([Practice Book §] 17-4)."[4]

On January 24, 2017, Pisani[5] moved to open and vacate the judgment of dismissal under General Statutes § 52-212a[6] and Practice Book § 17-4. In a memorandum of law in support of his motion, Pisani explained that the plaintiff had "misrepresented to the Probate Court in February of 2013 that she was unaware of any litigation pending, whereupon the Probate Court closed the estate. The estate was reopened on March 22, 2016, and the [Probate] Court appointed . . . Pisani as [coadministrator] on May 26, 2016." Pisani's memorandum also represented that, on July 27, 2016, the plaintiff's attorney had sent a letter to the Probate Court "requesting that the matter be set down for a hearing so that the litigation matter can be discussed between the coadministrators and the Probate Court. To that end, on August 30, 2016, the [Probate] Court . . . ordered [the plaintiff] to provide a copy of the [medical negligence] litigation file to . . . Pisani for his review. The expectation

was that the [medical negligence] case should remain open pending review of the file, the purpose of which was to report the status of the case to [the Probate Court], [which] had jurisdiction over the estate." (Internal quotation marks omitted.) Pisani claimed that "[c]ounsel for the [plaintiff] was aware of these facts and yet failed to request the warranted second request for [an] extension of time to file a withdrawal." Pisani alleged that the "lack of the request for [an] extension of time was due to mistake or accident or other reason unknown in that [the plaintiff] should have communicated to the [trial] court that there was a pending probate issue [and] requested an extension of time to file a withdrawal." Pisani's memorandum advised the trial court that the plaintiff had been removed as administratrix of the estate and that he had been appointed sole administrator "with the authority to handle . . . all litigation."

The defendants opposed Pisani's motion to open and vacate the judgment of dismissal on the grounds that (1) Pisani lacked standing because he was not a party to the medical negligence action, and he had not filed a motion to be substituted as the plaintiff, and (2) the motion failed to comply with the requirements of § 52-212 because it was not verified by oath, did not demonstrate that a good cause of action existed, and failed to establish that the plaintiff had been prevented from prosecuting the action by mistake, accident, or other reasonable cause. Pisani responded that (1) he had standing to move to open and vacate the judgment because, as the sole administrator of the estate, he "stepped into the shoes" of the plaintiff, (2) the final judgment of dismissal was not a judgment of default or nonsuit, and, therefore, the motion to open was governed by § 52-212a, not § 52-212, and (3) neither a good cause of action nor a reasonable cause needs to exist if the case was settled, and, to determine whether the case was settled, the judgment must be opened so Pisani can conduct an investigation into the status of the parties' settlement negotiations.

Pisani filed a supplemental motion to open and vacate the judgment of dismissal, claiming that "he has reason to believe that fraud has been committed." (Emphasis omitted.) Specifically, Pisani alleged that he "has reason to believe that a settlement was reached in the [medical negligence] matter, that [the Probate Court] was not told of the settlement, and did not authorize a settlement, [and] that the estate of his son should have received the proceeds of the settlement and did not." In support of this contention, Pisani referenced "a video [the plaintiff] posted online with the hashtag #4andahalfyearsin on April 25, 2016," in which she "was clearly happy, celebrating and satisfied," despite reportedly being informed by her attorney on that date that no settlement had been reached. The video, "[c]ombined with the fact that [Pisani] was kept in the dark about the estate for

years" and "the fact that a representation was made by [the plaintiff's] attorney that [the plaintiff] was aware of no pending litigation and the estate should be closed" in 2013, led Pisani to believe "that a fraud was committed and allowing the case to be dismissed was part of that fraud."

The defendants opposed Pisani's supplemental motion, contending that (1) Pisani still lacked standing because he was not a party to the action, (2) "no settlement payment was made by the defendants in connection with the [medical negligence] action," (3) even if a settlement had been reached, it would not provide a basis on which to open and vacate the judgment because the plaintiff would be forced to withdraw the action in light of the settlement, and (4) Pisani did not allege that the defendants had participated in the alleged fraud.

The trial court granted Pisani's motion to open and vacate the judgment, without explanation. The defendants moved for reconsideration and/or clarification of the trial court's order, contending that, because "the court did not issue a memorandum of decision, it is unclear whether the court considered all of [the arguments raised by the defendants] or on what basis the court granted the motion to open." The defendants asked the court to reconsider and/or clarify the basis of its decision in light of the arguments raised in their oppositions to Pisani's motion to open and vacate the judgment and supplemental motion to open and vacate the judgment. Pisani objected to the defendants' motion to the extent that it sought reconsideration of the trial court's order opening and vacating the judgment, but he did not object to any clarification by the court. The trial court denied the defendants' motion for reconsideration and/or clarification, again without elaboration.

The defendants appealed to the Appellate Court from the trial court's order granting Pisani's motion to open and vacate the judgment of dismissal. The defendants also filed a motion for articulation, claiming that the trial court's failure to issue "a written opinion detailing the basis for [its] decision to grant . . . Pisani's motion to open [rendered] the record . . . insufficient for review by the Appellate Court." The trial court denied the motion for articulation, and the defendants filed a motion for review with the Appellate Court. The Appellate Court treated the defendants' motion for review "as a motion for compliance with [Practice Book] § 64-1" and ordered the trial court "to comply with . . . § 64-1 by filing a memorandum of decision with respect to its May 8, 2017 order granting . . . Pisani's motion to open and vacate the judgment of dismissal, including the specific authority under which it issued that order." The Appellate Court also sua sponte ordered the trial court to "indicate in its memorandum of decision whether, in granting . . . Pisani's motion to open and

vacate the judgment of dismissal, it has substituted . . . Pisani, as [the] administrator of the estate of [the decedent], as the plaintiff in this case, or if it has otherwise taken any action to substitute him as the plaintiff in his capacity as administrator."

The trial court issued a memorandum of decision in compliance with the Appellate Court's order. The memorandum provided: "As a threshold matter, the court hereby substitutes the movant, [Pisani], administrator of the estate of [the decedent], as the plaintiff in this matter. The court hereby grants the substituted plaintiff's January 27, 2017 motion to open and vacate the judgment of dismissal [rendered] in this matter on September 29, 2016, pursuant to Practice Book § 14-3 for failure to file a withdrawal within a specified period of time. In doing so, the court finds that the plaintiff was prevented from filing the withdrawal by reasonable cause, specifically, the proceeding in the Probate Court regarding removal of the predecessor fiduciary, which the court failed to consider when it [rendered] the judgment of dismissal."

We transferred the defendants' appeal from the Appellate Court to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1. On appeal, the defendants renew the claims they made in the trial court in opposition to Pisani's motions to open and vacate the judgment, namely, that (1) Pisani lacked standing, (2) the motions failed to comply with § 52-212, and (3) any fraud resulting in the dismissal of the case was perpetrated by the plaintiff, not the defendants.

I

As a threshold matter, we address whether the trial court's order granting Pisani's motion to open and vacate the judgment is an appealable final judgment. "The jurisdiction of the appellate courts is restricted to appeals from judgments that are final. General Statutes §§ 51-197a and 52-263; Practice Book § [61-1] . . . . The policy concerns underlying the final judgment rule are to discourage piecemeal appeals and to facilitate the speedy and orderly disposition of cases at the trial court level. . . . The appellate courts have a duty to dismiss, even on [their] own initiative, any appeal that [they lack] jurisdiction to hear." (Citations omitted; internal quotation marks omitted.) *Solomon* v. *Keiser*, 212 Conn. 741, 745–46, 562 A.2d 524 (1989). We therefore "must always determine the threshold question of whether the appeal is taken from a final judgment before considering the merits of the claim." *State* v. *Curcio*, 191 Conn. 27, 30, 463 A.2d 566 (1983); see also *Peters* v. *Dept. of Social Services*, 273 Conn. 434, 441, 870 A.2d 448 (2005) ("[t]he subject matter jurisdiction requirement may not be waived by any party, and also may be raised by a party, or by the court sua sponte, at any stage of the proceedings, including on appeal").

"It is well settled that, as a general rule, the granting of a motion to open renders a trial court's judgment nonfinal and, therefore, ineffective pending its resolution. . . . Therefore, with limited exceptions . . . this court lacks jurisdiction over an appeal filed subsequent to the granting of a motion to open because there is no final judgment, an essential prerequisite to our jurisdiction." (Citations omitted.) *RAL Management, Inc.* v. *Valley View Associates*, 278 Conn. 672, 686, 899 A.2d 586 (2006); see also *Solomon* v. *Keiser*, supra, 212 Conn. 746 ("[a]s with setting aside a verdict, it is well established that an order opening a judgment ordinarily is not a final judgment within § 52-263"); *Connecticut Light & Power Co.* v. *Costle*, 179 Conn. 415, 418, 426 A.2d 1324 (1980) ("the granting of a motion to set aside a judgment and for a new trial is not ordinarily a 'final judgment' within the purview of either . . . § 52-263" or our rules of practice).

We have recognized a limited exception to this general rule, hereinafter referred to as the *Solomon* exception, "whe[n] the appeal 'challenges the power of the court to act to set aside the judgment' "; *Solomon* v. *Keiser*, supra, 212 Conn. 747, quoting *Connecticut Light & Power Co.* v. *Costle*, supra, 179 Conn. 418; reasoning that "[i]t is generally recognized that any rule of nonappealability or nonreviewability of a decision of a court setting aside its former decision does not apply and that an appeal lies where the court, in setting aside its former decision, acted beyond its jurisdiction." (Internal quotation marks omitted.) *Connecticut Light & Power Co.* v. *Costle*, supra, 418–19. In adopting the *Solomon* exception, we relied on *Phillips* v. *Negley*, 117 U.S. 665, 6 S. Ct. 901, 29 L. Ed. 1013 (1886), in which the United States Supreme Court held that "[t]he vacating of a judgment and granting a new trial, in the exercise of an acknowledged jurisdiction, leaves no judgment in force to be reviewed. If, on the other hand, the order made was made without jurisdiction on the part of the court making it, then it is a proceeding [that] must be the subject of review by an appellate court." Id., 671–72; see *Solomon* v. *Keiser*, supra, 746. Although *Phillips* was decided more than one hundred years ago, it retains vitality today, and the United States Courts of Appeals repeatedly have recognized that reviewing courts have appellate jurisdiction to review a trial court order opening a final judgment when "the jurisdiction of the court to grant the order is in question . . . ."[7] *Arenson* v. *Southern University Law Center*, 963 F.2d 88, 90 (5th Cir. 1992); see id. (dismissing appeal for lack of "a final, appealable judgment" because appellant's claims did not challenge jurisdiction of trial court); see also *Fuller* v. *Quire*, 916 F.2d 358, 360 (6th Cir. 1990) (noting that "[t]here is . . . a reasonably well grounded common-law exception to the [final judgment] rule whe[n] the [D]istrict [C]ourt acts without the power to do so"); *Stradley* v. *Cortez*, 518 F.2d 488,

491 (3d Cir. 1975) (noting that "courts of appeals have repeatedly recognized" that they have appellate jurisdiction to review "new trial orders challenged as beyond the trial court's jurisdiction"); *Rinieri* v. *News Syndicate Co.*, 385 F.2d 818, 821 (2d Cir. 1967) ("the law is settled that if the District Court assumes jurisdiction and power to act under [Federal Rule of Civil Procedure 60 (b)] where neither exists, an appeal will lie from its order vacating the original order").

The touchstone of the *Solomon* exception is the trial court's alleged lack of jurisdiction to disturb the finality of the judgment. See, e.g., *Novak* v. *Levin*, 287 Conn. 71, 77, 951 A.2d 514 (2008) (*Solomon* exception is reserved "for those cases in which the appellant makes a colorable challenge to the jurisdiction of the trial court to open the judgment" (internal quotation marks omitted)); *Cantoni* v. *Xerox Corp.*, 251 Conn. 153, 158, 740 A.2d 796 (1999) (same); *Conetta* v. *Stamford*, 246 Conn. 281, 294, 715 A.2d 756 (1998) ("[w]e have recognized an exception [to the final judgment rule] . . . for those cases in which the appellant makes a colorable challenge to the jurisdiction of the trial court to open the judgment"). "Where a final judgment has been ordered [opened] . . . permitting an immediate appeal helps to maintain the important balance between, on the one hand, the equitable insistence on justice at all costs and, on the other, the equally vital insistence that litigation must at some point conclude and reasonable expectations founded upon [long established] final judgments must not lightly be overturned." *Asset Acceptance, LLC* v. *Moberly*, 241 S.W.3d 329, 334 (Ky. 2007); see also *Rosenfield* v. *Rosenfield*, 61 Conn. App. 112, 117–18, 762 A.2d 511 (2000) (recognizing that final judgment existed in *Connecticut Light & Power Co.*, *Solomon*, and *Cantoni* because "the trier of fact had not only rendered a decision on the merits, but also had issued an order that, if carried out, might have been harmful and irreversible to the appellant"). Under the exception, "the only question on appeal is the jurisdictional one"; in the absence of a colorable challenge to the trial court's jurisdiction, "the appellate court's own jurisdiction fails, and the appeal must be dismissed." *Asset Acceptance, LLC* v. *Moberly*, supra, 333.

Claims on appeal that do not challenge the trial court's jurisdiction—but instead allege that the trial court did not appropriately exercise that jurisdiction to open a final judgment under our General Statutes, rules of practice, or common-law principles—do not fall within the scope of the *Solomon* exception and, therefore, are unreviewable in an interlocutory appeal. We have previously explained this distinction in terms of the difference between a trial court's "jurisdiction," on the one hand, and its "authority to act," on the other. In *Amodio* v. *Amodio*, 247 Conn. 724, 724 A.2d 1084 (1999), we recognized the "distinction between a trial court's jurisdiction and its authority to act under a par-

ticular statute. Subject matter jurisdiction involves the authority of a court to adjudicate the type of controversy presented by the action before it. . . . A court does not truly lack subject matter jurisdiction if it has competence to entertain the action before it. . . . Once it is determined that a tribunal has authority or competence to decide the class of cases to which the action belongs, the issue of subject matter jurisdiction is resolved in favor of entertaining the action. . . . Although related, the court's authority to act pursuant to a statute is different from its subject matter jurisdiction. The power of the court to hear and determine, which is implicit in jurisdiction, is not to be confused with the way in which that power must be exercised in order to comply with the terms of the statute."[8] (Citations omitted; internal quotation marks omitted.) Id., 727–28. This distinction is important because, among other reasons, a judgment rendered by a trial court that lacked jurisdiction is not merely *voidable* but *void ab initio* and, therefore, subject to attack at any time.[9] See, e.g., *Sousa* v. *Sousa*, 322 Conn. 757, 771, 143 A.3d 578 (2016) ("challenges to subject matter jurisdiction may be raised at any time," even in collateral attacks on judgment); *Ajadi* v. *Commissioner of Correction*, 280 Conn. 514, 533–34, 911 A.2d 712 (2006) ("[w]here the court rendering the judgment lacks jurisdiction of the subject matter the judgment itself is void," but "[a] voidable judgment is a judgment entered erroneously by a court having jurisdiction" (internal quotation marks omitted)).

*Cantoni* v. *Xerox Corp.*, supra, 251 Conn. 153, is illustrative of the distinction made in *Solomon* between appellate claims challenging a tribunal's *jurisdiction* and those challenging the correctness of a decision made by a tribunal in the course of its *exercise of its jurisdiction*. In *Cantoni*, we considered "whether a dispute about the authority of the . . . [C]ompensation [R]eview [B]oard to remand a workers' compensation claim to a trial commissioner other than the commissioner who originally heard the claim is an appealable final judgment." Id., 154. Although the defendants recognized that a remand order ordinarily is not a final judgment for purposes of appeal, they argued that "their appeal is different because it raises a question that falls within the exception to the final judgment rule relating to colorable claims of lack of jurisdiction in a trial court" under *Solomon*. Id., 158. We disagreed. In a decision authored by former Chief Justice Peters, the court explained that there was a distinction, on the one hand, between claims challenging a tribunal's subject matter jurisdiction and those, on the other hand, challenging a tribunal's exercise of its jurisdiction. The defendants' claim on appeal did not "raise a colorable claim" implicating the board's jurisdiction to order a remand, and, therefore, we concluded that there was "not an appealable final judgment." Id., 168. Accordingly, the defen-

dants' appeal properly was dismissed for lack of appellate jurisdiction. Id.; see also *Reinke* v. *Sing*, 328 Conn. 376, 390–91, 179 A.3d 769 (2018) (distinguishing between trial court's subject matter jurisdiction and its statutory authority to open and modify dissolution judgment); *Hill* v. *Hill*, 25 Conn. App. 452, 455–56, 594 A.2d 1041 (dismissing appeal for lack of jurisdiction because, even if evidence was insufficient to open judgment on basis of fraud as plaintiff claimed, trial court "was not acting without jurisdiction but in the erroneous exercise of its jurisdiction"), cert. denied, 220 Conn. 917, 597 A.2d 333 (1991); cf. *Rocque* v. *Sound Mfg., Inc.*, 76 Conn. App. 130, 136, 818 A.2d 884 (dismissing appeal from trial court's order granting motion to intervene because "[t]he issue raised in this case is whether the court properly exercised its power to permit the intervention; that claim does not implicate the subject matter jurisdiction of the court, but rather involves whether the court properly exercised its authority"), cert. denied, 263 Conn. 927, 823 A.2d 1217 (2003).

We recognize that our case law articulating and applying the *Solomon* exception has not always consistently adhered to the subtle, but critical, distinction between appellate claims that challenge a trial court's *jurisdiction* to open a judgment and those that challenge a trial court's *appropriate exercise of that jurisdiction*. The source of the difficulty may be that our early case law characterized the limitation imposed on a trial court's authority to open a judgment under § 52-212a as jurisdictional,[10] and it was not until *Kim* v. *Magnotta*, 249 Conn. 94, 733 A.2d 809 (1999), that we clarified that this limitation "operates as a constraint, not on the trial court's jurisdictional authority, but on its substantive authority to adjudicate the merits of the case before it." Id., 104; see id., 101–103 (holding that four month time limitation to file motion to open judgment under § 52-212a does not implicate trial court's subject matter or personal jurisdiction). Perhaps more fundamentally, the problem stems from the fact that "the distinction between challenges to the trial court's subject matter jurisdiction and challenges to the exercise of its statutory authority is not always clear" and sometimes "has proven illusory in practice."[11] (Internal quotation marks omitted.) *In re Jose B.*, 303 Conn. 569, 574, 580, 34 A.3d 975 (2012). Whatever the reason, it appears that, over time, the *Solomon* exception occasionally has become unmoored from its animating principle, causing us to characterize as immediately appealable any order opening a judgment in which the trial court's "power" or "authority" under our General Statutes, rules of practice, or common law is challenged, regardless of whether that challenge implicates the trial court's jurisdiction. See, e.g., *Citibank, N.A.* v. *Lindland*, 310 Conn. 147, 156–57 n.4, 75 A.3d 651 (2013) ("[a]n order of the trial court opening a judgment is . . . an appealable final judgment [when] the issue raised is

the power of the trial court to open [the judgment] in light of the four month limitation period of . . . § 52-212a" (internal quotation marks omitted)); *Nelson* v. *Dettmer*, 305 Conn. 654, 672, 46 A.3d 916 (2012) (same); *Rosado* v. *Bridgeport Roman Catholic Diocesan Corp.*, 276 Conn. 168, 195, 884 A.2d 981 (2005) (same); see also *Ramos* v. *J.J. Mottes Co.*, 150 Conn. App. 842, 843 n.2, 93 A.3d 624 (2014) (concluding that claim challenging trial court's authority to open judgment under rules of practice fell within scope of *Solomon* exception and, therefore, was reviewable on appeal); *Byars* v. *FedEx Ground Package System, Inc.*, 101 Conn. App. 44, 46 n.2, 920 A.2d 352 (2007) (same); *Richards* v. *Richards*, 78 Conn. App. 734, 740, 829 A.2d 60 (concluding that trial court's order opening dissolution judgment was final for purposes of appeal because plaintiff claimed that there was no mutual mistake), cert. denied, 266 Conn. 922, 835 A.2d 473 (2003).

We now clarify that the *Solomon* exception is a narrow and limited exception to the general rule that an order granting a motion to open is not an appealable final judgment and that, to fall within the scope of the *Solomon* exception, an appellant's claim or claims must challenge the trial court's jurisdiction to adjudicate the motion, as opposed to an alleged erroneous ruling in its exercise of jurisdiction under our General Statutes, rules of practice, or common-law principles. In the absence of a colorable challenge to the trial court's jurisdiction, there is no final judgment from which to appeal, and, therefore, the appeal must be dismissed for lack of appellate jurisdiction.

Having clarified the scope of the *Solomon* exception, we now address whether the present appeal falls within the parameters of that exception—that is, whether the defendants' claims on appeal raise a colorable challenge to the trial court's jurisdiction to adjudicate Pisani's motion to open and vacate the final judgment of dismissal. As previously explained, "[s]ubject matter jurisdiction involves the authority of a court to adjudicate the type of controversy presented by the action before it. . . . A court does not truly lack subject matter jurisdiction if it has competence to entertain the action before it." (Citation omitted; internal quotation marks omitted.) *Amodio* v. *Amodio*, supra, 247 Conn. 727–28; accord *Sousa* v. *Sousa*, supra, 322 Conn. 772. Trial "[c]ourts have an inherent power to open, correct and modify . . . [a] civil judgment of the Superior Court" and, therefore, have general subject matter jurisdiction to adjudicate motions to open.[12] (Internal quotation marks omitted.) *Chapman Lumber, Inc.* v. *Tager*, 288 Conn. 69, 106, 952 A.2d 1 (2008). The limitations that §§ 52-212 and 52-212a and our rules of practice impose on the trial court's authority to open a judgment do not implicate the trial court's jurisdiction but, rather, its exercise of jurisdiction. See *Kim* v. *Magnotta*, supra, 249 Conn. 104; see also *Reinke* v. *Sing*, supra, 328 Conn.

390 (holding that trial court had jurisdiction "to entertain and determine the plaintiff's claim seeking a modification of the dissolution judgment" because, among other things, trial court has "plenary and general subject matter jurisdiction over dissolution actions"); *Ruiz* v. *Victory Properties, LLC*, 180 Conn. App. 818, 829, 184 A.3d 1254 (2018) ("courts of general jurisdiction have the inherent power to open, correct, or modify their own judgments, [but] the duration of this power is restricted by statute and rule of practice" (internal quotation marks omitted)). Indeed, we have recognized that a trial court has "inherent" power, "independent of [any] statutory provisions," to open a judgment "obtained by fraud, in the actual absence of consent, or by mutual mistake" at any time.[13] *Kenworthy* v. *Kenworthy*, 180 Conn. 129, 131, 429 A.2d 837 (1980).

We return to the question of whether the defendants' appeal raises a colorable challenge to the jurisdiction of the trial court. The defendants claim that the trial court improperly granted Pisani's motion to open the judgment because (1) Pisani lacked standing, (2) the trial court failed in various ways to comply with the statutory requirements of § 52-212a, and (3) the alleged fraud was perpetrated by the plaintiff rather than the defendants. As the foregoing discussion should make clear, the defendants second and third claims challenge the trial court's statutory and common-law authority to grant the motion to open the judgment rather than its jurisdiction to adjudicate the motion, and, therefore, these claims will be dismissed for lack of a final judgment.[14] The defendants' first claim, however, raises a colorable challenge to the trial court's jurisdiction to adjudicate the motion in light of Pisani's alleged lack of standing, and, therefore, this claim is reviewable on appeal under the *Solomon* exception.

II

The defendants argue that Pisani lacked standing to move to open and vacate the final judgment of dismissal because he was not a party to the action. Pisani responds that, as the sole administrator of the decedent's estate, he had standing to move to open the judgment on behalf of the estate. We agree with Pisani.

Standing "implicate[s] a court's subject matter jurisdiction and its competency to adjudicate a particular matter." (Internal quotation marks omitted.) *Chapman Lumber, Inc.* v. *Tager*, supra, 288 Conn. 86. "A determination regarding a trial court's subject matter jurisdiction is a question of law" over which "our review is plenary . . . ." (Internal quotation marks omitted.) *Andross* v. *West Hartford*, 285 Conn. 309, 321, 939 A.2d 1146 (2008).

"Standing is not a technical rule intended to keep aggrieved parties out of court; nor is it a test of substantive rights. Rather it is a practical concept designed to

ensure that courts and parties are not vexed by suits brought to vindicate nonjusticiable interests and that judicial decisions which may affect the rights of others are forged in hot controversy, with each view fairly and vigorously represented. . . . These two objectives are ordinarily held to have been met when a complainant makes a colorable claim of direct injury he has suffered or is likely to suffer, in an individual or representative capacity. Such a personal stake in the outcome of the controversy . . . provides the requisite assurance of concrete adverseness and diligent advocacy. . . . The requirement of directness between the injuries claimed by the plaintiff and the conduct of the defendant also is expressed, in our standing jurisprudence, by the focus on whether the plaintiff is the proper party to assert the claim at issue." (Internal quotation marks omitted.) Id., 322.

A movant has standing to open a final judgment if he or she is aggrieved by that judgment, that is, if the movant has a "specific, personal and legal interest in" the judgment that would be "specially and injuriously affected . . . ." (Internal quotation marks omitted.) Id.; see id. ("Classical aggrievement requires a two part showing. First, a party must demonstrate a specific, personal and legal interest in the subject matter of the [controversy], as opposed to a general interest that all members of the community share. . . . Second, the party must also show that the [alleged conduct] has specially and injuriously affected that specific personal or legal interest." (Internal quotation marks omitted.)); *Bruno* v. *Bruno*, 146 Conn. App. 214, 222–24, 228, 76 A.3d 725 (2013) (concluding that husband had standing to file postdissolution motions to open contempt orders because he was aggrieved by those orders but that husband's current wife did not have standing because she was not aggrieved); *Ragin* v. *Lee*, 78 Conn. App. 848, 864, 829 A.2d 93 (2003) (holding that nonparty child to paternity action had standing to move to open judgment of paternity because child had "independent and fundamental interest in an accurate determination of his paternity"); see also General Statutes § 52-212 (a) (judgment may be opened "upon the complaint or written motion of any party or person prejudiced thereby"). It is undisputed that a plaintiff whose action has been dismissed for failure to prosecute with reasonable diligence is aggrieved by the entry of a final judgment of dismissal and, therefore, has standing to move to open the judgment of dismissal. The defendants claim that Pisani lacked standing, however, because he was not the named plaintiff at the time the trial court dismissed the action.

The record reflects that the original plaintiff was removed as administratrix of the decedent's estate and that Pisani was appointed as the sole administrator with full legal authority to prosecute all actions that had been initiated by the original plaintiff on behalf of the

estate in her representative capacity. See General Statutes § 45a-242 (e) ("[a]ll suits in favor of or against the original fiduciary shall survive to and may be prosecuted by or against the person appointed to succeed such fiduciary"); see also General Statutes § 45a-315 (defining fiduciary to include "the executor or administrator of a decedent's estate"). As the replacement administrator, Pisani stepped into the shoes of the original plaintiff and acquired all of the rights and responsibilities that she had held in her representative capacity, including her aggrievement as a consequence of the dismissal of the present action instituted on behalf of the decedent's estate. We therefore conclude that Pisani was the proper party to move to open and vacate the trial court's judgment of dismissal.[15] Once the judgment was opened, the trial court properly substituted Pisani as the plaintiff in the present action in accordance with § 45a-242 (e); cf. *Joblin* v. *LaBow*, 33 Conn. App. 365, 367, 635 A.2d 874 (1993) (recognizing that, when "judgment has been rendered . . . substitution is unavailable unless the judgment is opened"), cert. denied, 229 Conn. 912, 642 A.2d 1207 (1994); see also *Systematics, Inc.* v. *Forge Square Associates Ltd. Partnership*, 45 Conn. App. 614, 619, 697 A.2d 701 (same), cert. denied, 243 Conn. 907, 701 A.2d 337 (1997). Because our appellate jurisdiction here is limited to our review of the trial court's subject matter jurisdiction, we express no opinion on the merits of the defendants' other claims challenging the propriety of the trial court's order opening and vacating the final judgment of dismissal. See footnote 14 of this opinion. Appellate review of those claims must await a final judgment. In the present appeal, we reject only the defendants' claim that the trial court lacked subject matter jurisdiction to open and vacate the judgment.

The appeal is dismissed except insofar as the defendants challenge the subject matter jurisdiction of the trial court to open the judgment and the case is remanded for further proceedings according to law.

In this opinion the other justices concurred.

* April 22, 2020, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] Practice Book § 14-3 (a) provides: "If a party shall fail to prosecute an action with reasonable diligence, the judicial authority may, after hearing, on motion by any party to the action pursuant to Section 11-1, or on its own motion, render a judgment dismissing the action with costs. At least two weeks' notice shall be required except in cases appearing on an assignment list for final adjudication. Judgment files shall not be drawn except where an appeal is taken or where any party so requests."

[2] General Statutes § 52-212 provides in relevant part: "(a) Any judgment rendered or decree passed upon a default or nonsuit in the Superior Court may be set aside, within four months following the date on which it was rendered or passed, and the case reinstated on the docket, on such terms in respect to costs as the court deems reasonable, upon the complaint or written motion of any party or person prejudiced thereby, showing reasonable cause, or that a good cause of action or defense in whole or in part existed at the time of the rendition of the judgment or the passage of the decree, and that the plaintiff or defendant was prevented by mistake, accident or other reasonable cause from prosecuting the action or making the defense.

\* \* \*

  (c) The complaint or written motion shall be verified by the oath of the complainant or his attorney, shall state in general terms the nature of the claim or defense and shall particularly set forth the reason why the plaintiff or defendant failed to appear. . . .”

[3] Practice Book § 17-43 (a) provides: “Any judgment rendered or decree passed upon a default or nonsuit may be set aside within four months succeeding the date on which notice was sent, and the case reinstated on the docket on such terms in respect to costs as the judicial authority deems reasonable, upon the written motion of any party or person prejudiced thereby, showing reasonable cause, or that a good cause of action or defense in whole or in part existed at the time of the rendition of such judgment or the passage of such decree, and that the plaintiff or the defendant was prevented by mistake, accident or other reasonable cause from prosecuting or appearing to make the same. Such written motion shall be verified by the oath of the complainant or the complainant’s attorney, shall state in general terms the nature of the claim or defense and shall particularly set forth the reason why the plaintiff or the defendant failed to appear. The judicial authority shall order reasonable notice of the pendency of such written motion to be given to the adverse party, and may enjoin that party against enforcing such judgment or decree until the decision upon such written motion.”

[4] Practice Book § 17-4 (a) provides: “Unless otherwise provided by law and except in such cases in which the court has continuing jurisdiction, any civil judgment or decree rendered in the Superior Court may not be opened or set aside unless a motion to open or set aside is filed within four months succeeding the date on which notice was sent. The parties may waive the provisions of this subsection or otherwise submit to the jurisdiction of the court.”

[5] The plaintiff did not participate in the proceedings on the motion to open; nor is she a party to the present appeal.

[6] General Statutes § 52-212a provides in relevant part: “Unless otherwise provided by law and except in such cases in which the court has continuing jurisdiction, a civil judgment or decree rendered in the Superior Court may not be opened or set aside unless a motion to open or set aside is filed within four months following the date on which it was rendered or passed. . . .”

[7] We recognize that “[t]he theory that an order granting a new trial can be appealed if the court lacked jurisdiction or power to make the order has been criticized.” 15B C. Wright et al., Federal Practice and Procedure (2d Ed. 1992) § 3915.5, p. 308 n.26. As one treatise explains, “[t]he appeal disrupts continuing trial court proceedings and interferes with trial court control as much as any other appeal, except to the extent that it may be possible to dispose of the appeal more expeditiously. Once an appeal is allowed, more-over, there is a strong temptation, supported by obvious efficiency advantages, to expand it to include other matters. Perhaps most important, cases involving clear violation of procedural requirements, or important questions that deserve immediate response, can be met by relying on other means of review.” Id., pp. 308–309; see also *Asset Acceptance*, *LLC* v. *Moberly*, 241 S.W.3d 329, 334 (Ky. 2007) (“[C]ommentators have generally given the federal practice lukewarm reviews at best. Their concerns are that the grant of an immediate appeal disrupts trial court proceedings, that it risks piecemeal appeals, that it increases already heavy appellate caseloads, that it encourages imaginative attempts to characterize alleged trial court errors as jurisdictional breaches, and that it is not necessary given the availability of extraordinary writs in those cases [in which] the trial court is clearly abusing its authority.”). “Notwithstanding these criticisms, the federal practice remains viable after more than 120 years.” *Asset Acceptance*, *LLC* v. *Moberly*, supra, 334. The *Solomon* exception likewise remains viable in Connecticut, and neither party asks us to reconsider its continued vitality.

[8] In *Amodio*, we considered “whether the Appellate Court properly concluded that the trial court lacked subject matter jurisdiction to modify a child support award.” *Amodio* v. *Amodio*, supra, 247 Conn. 725–26. We held that the trial court had general subject matter jurisdiction to modify a child support award and that the plaintiff’s claim challenging the propriety of the modification order under General Statutes § 46b-86 (a) implicated the trial court’s statutory authority, not its jurisdiction. See id., 731 (“[i]n concluding that the trial court had no *jurisdiction* to modify [the child support award] . . . the Appellate Court confused the issues of subject matter jurisdiction and the proper exercise of the trial court’s authority to act pursuant to § 46b-86 (a)” (emphasis in original)).

[9] Of course, many other important consequences flow from characterizing an issue as jurisdictional versus nonjurisdictional. For example, as previously explained, jurisdictional issues "may not be waived by any party, and also may be raised by a party, or by the court sua sponte, at any stage of the proceedings, including on appeal." *Peters* v. *Dept. of Social Services*, supra, 273 Conn. 441. Furthermore, "once the issue of subject matter jurisdiction is raised, it must be immediately acted upon by the court." (Internal quotation marks omitted.) *Ajadi* v. *Commissioner of Correction*, 280 Conn. 514, 533, 911 A.2d 712 (2006); see also *Gurliacci* v. *Mayer*, 218 Conn. 531, 545, 590 A.2d 914 (1991) ("as soon as the jurisdiction of the court to decide an issue is called into question, all other action in the case must come to a halt until such a determination is made").

[10] See *In re Baby Girl B.*, 224 Conn. 263, 288, 618 A.2d 1 (1992) (holding that four month time limitation on filing of motions to open in § 52-212a pertained to personal jurisdiction, which can be waived); *Van Mecklenburg* v. *Pan American World Airways, Inc.*, 196 Conn. 517, 518–19, 494 A.2d 549 (1985) (holding that "the trial court was simply without jurisdiction to order that the proceedings be reopened" because motion was not timely filed within four months).

[11] The distinction between a trial court's jurisdiction and its appropriate exercise of that jurisdiction "has caused ongoing confusion . . . ." *Tremont Public Advisors, LLC* v. *Connecticut Resources Recovery Authority*, 333 Conn. 672, 693 n.11, 217 A.3d 953 (2019); see id., 692–93 n.11 (recognizing "that the distinction between subject matter jurisdiction, which implicates the court's authority to entertain and adjudicate a matter, and the authority to act pursuant to a statute, which implicates the court's authority to grant relief on the merits, has caused ongoing confusion"). This confusion, linguistic and conceptual, has at times been compounded by our use of the term "authority" to describe both a trial court's jurisdictional competence, as well as its ability to grant the requested relief in conformance with our General Statutes, rules of practice, and common-law principles. See, e.g., id., 692–93 n.11; see also *Kim* v. *Magnotta*, supra, 249 Conn. 104 (distinguishing between "jurisdictional *authority*" and "substantive *authority*" (emphasis added)). To further complicate matters, in certain circumstances "the question of jurisdiction [may be so] intertwined with the merits of the case" that the issue "of whether the court has jurisdiction over the plaintiffs' claims and whether the plaintiffs ultimately can prevail on those claims appear to turn on the same question . . . ." (Internal quotation marks omitted.) *Angersola* v. *Radiologic Associates of Middletown, P.C.*, 330 Conn. 251, 277–78, 193 A.3d 520 (2018). See generally *Lampasona* v. *Jacobs*, 209 Conn. 724, 728, 553 A.2d 175 ("In determining whether a court lacks subject matter jurisdiction, the inquiry usually does not extend to the merits of the case. . . . In order to establish subject matter jurisdiction, the court must determine that it has the power to hear the general class [of cases] to which the proceedings in question belong. . . . In some cases, however, it is necessary to examine the facts of the case to determine whether it is within a general class that the court has power to hear." (Citations omitted; internal quotation marks omitted.)), cert. denied, 492 U.S. 919, 109 S. Ct. 3244, 106 L. Ed. 2d 590 (1989). The difficulty is not unique to Connecticut's jurisprudence; the federal courts also have struggled to distinguish between jurisdictional and nonjurisdictional limitations on judicial authority. See, e.g., *Arbaugh* v. *Y & H Corp.*, 546 U.S. 500, 511, 126 S. Ct. 1235, 163 L. Ed. 2d 1097 (2006) ("[s]ubject matter jurisdiction in [federal question] cases is sometimes erroneously conflated with a plaintiff's need and ability to prove the defendant bound by the federal law asserted as the predicate for relief— a [merits related] determination" (internal quotation marks omitted)); E. Hawley, "The Supreme Court's Quiet Revolution: Redefining the Meaning of Jurisdiction," 56 Wm. & Mary L. Rev. 2027, 2030 (2015) (explaining that, in recent case law, United States Supreme Court has "narrowed the definition of jurisdiction to mean only the courts' power to decide cases").

[12] In criminal cases, by contrast, "a trial court loses jurisdiction upon the execution of the defendant's sentence, unless it is expressly authorized to act." *State* v. *McCoy*, 331 Conn. 561, 585, 206 A.3d 725 (2019).

[13] That is not to say that a trial court *always* has subject matter jurisdiction to adjudicate a motion to open a final judgment. For example, "[a] case that is nonjusticiable must be dismissed for lack of subject matter jurisdiction." (Internal quotation marks omitted.) *Chapman Lumber, Inc.* v. *Tager*, supra, 288 Conn. 86; see id. (noting that "[j]usticiability comprises several related doctrines, namely, standing, ripeness, mootness and the political question doctrine, that implicate a court's subject matter jurisdiction and its compe-

tency to adjudicate a particular matter" (emphasis omitted; internal quotation marks omitted)).

[14] We express no opinion on the merits of the defendants' second and third claims on appeal because "[a]ppellate review of [these claims] must await a final judgment." *Cantoni* v. *Xerox Corp.*, supra, 251 Conn. 168.

[15] The defendants' reliance on *Hodkin* v. *Millan*, Superior Court, judicial district of Hartford, Docket No. CV-15-5039805-S (February 19, 2016) (61 Conn. L. Rptr. 817), to support their claim to the contrary is misplaced. In *Hodkin*, the plaintiff had filed an action against the defendant, Raymond Millan, in his representative capacity as the administrator of his daughter's estate. Id., 817. Millan moved to dismiss the action as moot because he was "no longer the administrator of the estate" and was "sued only in his capacity as administrator of the estate, and not in his individual capacity, and . . . he has resigned from that position and [another individual] has been appointed successor administrator." Id. The trial court agreed and dismissed the action as moot, reasoning that, under § 45a-242, "once [Millan] resigned as administrator, and a new administrator was appointed in August of 2015, the person appointed as the new administrator should have been substituted as a defendant in this matter if the plaintiff intended to continue to prosecute this action. This has not been done." Id. Consistent with *Hodkin*, we conclude that, upon the removal or resignation of an administrator under § 45a-242, the proper party to litigate an action filed by or against the original administrator in his or her representative capacity is the replacement administrator.

---